Diana K. COLBY and John R. Colby,
Her Husband, Plaintiffs,

v.

E.R. SQUIBB & SONS, INC., a
Corporation, Defendant.

No. 81–1542.

United States District Court,
D. Kansas.

July 9, 1984.

Arden Bradshaw, Wichita, Kan., for plaintiffs.

Steve Fabert, Topeka, Kan., for defendant.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Diana Colby claims in this lawsuit to have been afflicted with a clear cell adenocarcinoma of the vagina resulting from her prenatal exposure to diethylstilbestrol (DES) manufactured by defendant E.R. Squibb & Sons, Inc. (Squibb). Squibb now seeks summary judgment on the grounds that the statute of limitations has run against Mrs. Colby; as explained below, the Court concludes that the statute has not run on Mrs. Colby's claims, that Squibb's motion must therefore be denied, and that partial summary judgment must be granted in favor of Mrs. Colby on the limitations issue.

The relevant facts that bear on the limitations question are undisputed. Mrs. Colby was born in 1952; her mother had taken

DES during pregnancy in hopes of forestalling a threatened miscarriage. Mrs. Colby herself gave birth to a son, delivered via caesarian section, in January 1979. During the course of her recovery, Mrs. Colby complained to her physicians of vaginal bleeding and pain; they initially suspected that a kidney problem was responsible for her ailments, and accordingly referred her to a nephrologist. Various conservative treatments were unsuccessful, however; Mrs. Colby's bleeding and pain continued, and her physicians concluded that a hysterectomy was necessary to alleviate her symptoms. They accordingly performed a hysterectomy on her in December 1979, but failed to detect any particularly alarming (or DES-related) conditions at this time.

The hysterectomy did not alleviate the pain or bleeding, however, and Mrs. Colby's post-operative internal healing proceeded very slowly. She apparently had a lesion at the suture line where her uterus had been removed, and her physicians began to suspect that her condition might be DES-related; they first mentioned this possibility to her in May 1980, when they also referred her to Dr. Alma Young, a gynecologist, for a more intensive examination and for treatment. Dr. Young's prescribed regimen—a topical ointment and temporary abstinence from sexual intercourse—was apparently successful; within a few weeks Mrs. Colby reported that her pain had lessened, and Dr. Young's examinations revealed that plaintiff's suture line lesion had healed; biopsies and colposcopic examinations in June 1980, however, did reveal vaginal adenosis and vaginal vault mosaic, which Dr. Young apparently took as a sign of DES exposure. By August 1980 Mrs. Colby's pain and bleeding were eliminated, and she had resumed having sexual relations with her husband. Throughout this period, during which Dr. Young carefully examined Mrs. Colby's vagina five or more times, and conducted intensive colposcopic evaluation, no lesion was detected other than the suture line ulcer in the upper vaginal vault. Mrs. Colby returned to Dr. Young in November 1980, complaining of a slightly bloody discharge and painful intercourse. Dr. Young diagnosed a Trichomonas infection and prescribed an antiparasitic drug to Mrs. Colby and her spouse.

Mrs. Colby returned to Dr. Young in February 1981, complaining of slight pain on intercourse. Upon examination, Dr. Young discovered a "tiny" vaginal lesion, well below the vaginal vault, which she had not previously seen or palpated; within a month, the lesion had increased considerably in size, and was extremely painful to examination. In April 1981, biopsies revealed that the lesion was a clear cell adenocarcinoma; Mrs. Colby filed her lawsuit against Squibb in April 1982.[1]

■ The applicable Kansas statute of limitations requires that a tort action such as this one be brought within two years of the time it accrues, but that it

> shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action.

K.S.A. 60–513(b). Squibb's argument that the statute has run against Mrs. Colby is based on two premises. The first premise is that because Squibb's allegedly wrongful conduct (selling DES without adequately testing it for harmful effects) occurred more than 30 years ago, the statutory extension of the limitation period when the "fact of injury is not reasonably ascertainable" is rendered inoperative by the final 10-year cutoff clause of Section 513(b). The second premise is that Mrs. Colby suf-

---

1. The lawsuit was first filed against another DES manufacturer, since dismissed from the case, in October 1981; Squibb was added as a defendant when new evidence was unearthed suggesting that Squibb had manufactured some of the DES taken by plaintiff's mother.

fered "substantial injury", for purposes of the present lawsuit, no later than her 1979 hysterectomy, since "a plaintiff has unquestionably suffered a sufficient legal injury to trigger the statute of limitations" when she suffers enough pain to require a major surgical operation. Defendant's Brief in Support of Motion for Summary Judgment, at 9.

While Mrs. Colby has not chosen to question Squibb's first premise, the validity of that premise is at least doubtful. Squibb blithely concedes that, so construed, the statute is grossly unfair, even irrational, since it gives a blamelessly ignorant plaintiff 10 years to discover an injury that is immediate, but only two years to discover an injury that fulminates into existence long after its cause. The legislature has spoken, trumpets Squibb, and we may not question it. The language of the statute, however, is not nearly as "plain" as Squibb would have this Court believe, because when the legislature chose the language "beyond the time of the act giving rise to the cause of action" it chose an ungrammatical "fused participle" construction. This construction is ambiguous, because one cannot tell whether the words "giving rise" are to be understood as a true participle (in which case they function as a mere adjective attached to the noun "act") or as a gerund (in which case they function as a noun attached to the preposition "of", as in "he will not live beyond the time of the bomb exploding".). *See* H. Fowler, A Dictionary of Modern Usage, *Fused Participle*, 215–218 (2d Ed.1965). Under either alternative, of course, the 10-year period would run regardless of whether injury was, or could have been, discovered, *see Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 94, 490 P.2d 649 (1971), but under the second alternative the 10-year period would not begin until substantial injury had occurred. Moreover, even if a "plain language" argument had some validity in this case, it has long been recognized that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). The transparent spirit, or thrust, of K.S.A. 60–513(b) is to relieve the plaintiff from his own blameless ignorance and soften the harshness of the previously applied rule. *See, e.g., Miller v. Beech Aircraft Corp.*, 204 Kan. 184, 188–89, 460 P.2d 535 (1969); Blaes, Some Comments on the New Code of Civil Procedure, 12 Kan. L.Rev. 75, 76 (1963). While it is possible that the Kansas Legislature had a perverse intent when it enacted K.S.A. 60–513(b) in 1963, it is at least as reasonable to suppose that when it chose to employ the inelegant phraseology "time of the act giving rise to the cause of action" it intended to focus on when the defendant caused injury that could, at least in principle, be detected, rather than when the defendant loosed its negligence into the air.

■ In any case, it is unnecessary to delve any further into the general meaning of the 10-year clause: whereas Squibb's first premise is open to question, its second premise is simply false. The Court is willing to grant that Mrs. Colby's 1979 pain, in the abstract, might be deemed "substantial injury"; surely the resultant hysterectomy is nothing to sneeze at. Mrs. Colby, however, is not suing for those old injuries; she is not suing for her 1979 pain; she is not suing for her 1979 bleeding; she is not suing because her hysterectomy took too long to heal in early 1980; and this Court need not worry itself over whether those unraised claims are time barred. Mrs. Colby *is* suing for her clear cell adenocarcinoma—which first appeared as a "tiny lesion" less than 15 months before she sued Squibb, and which wasn't diagnosed until some two months after it appeared—an entirely separate and distinct disease. Implicit in Squibb's second premise is the notion that Mrs. Colby did not have the option to waive tort recovery for her relatively trivial adenosis-related injuries and sue for a more serious carcinoma only if and when such a condition developed.

This Court categorically rejects any such notion. As noted in *Wilson v. Johns-Man-*

*ville Sales Corp.*, 684 F.2d 111 (D.C.Cir. 1982), an analogous case where a worker's asbestosis preceded his mesothelioma by several years, the position staked out by Squibb would mandate that a DES daughter such as Mrs. Colby could *never* recover for cancer unless she filed suit within two years of the manifestation of adenosis or related pathologies *and* she happened to develop a carcinoma while her lawsuit was pending. It is obvious, of course, that had Mrs. Colby sued in 1979 and tried to recover damages for future cancer, that Squibb would have wasted no time in seeking dismissal on the ground that the probability of eventual carcinoma—apparently far less than one percent, *see* A. Herbst, The Epidemiology of Vaginal and Cervical Clear Cell Adenocarcinoma *in* A. Herbst & H. Bern, Developmental Effects of Diethylstilbestrol (DES) in Pregnancy, 63–70 (1981)—was too speculative, conjectural and uncertain to support a cause of action.[2] *See Wilson, supra,* 684 F.2d at 120; *see also Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (Md.1983) (following *Wilson* ).

The *Wilson* decision is based on two key rationales. The first is that the "evidentiary" function of a statute of limitations—protecting defendants from time-flawed evidence, fading memories, lost documents, etc.—is of small importance in a latent disease case:

> [I]n situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes.

684 F.2d at 119. The second *Wilson* rationale is pragmatic:

Concern for judicial economy also influences our decision. Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequences of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial.

684 F.2d at 120. This Court believes that the *Wilson* approach is entirely sound, and that the Kansas Supreme Court would adopt it.

█ There remains Squibb's contention, based on deposition testimony by Dr. Ampuero, the physician who treated Mrs. Colby's carcinoma, that even though a "tiny" lesion was first seen in February 1981, it is probable that, viewed in hindsight, the cancer was actually present prior to April 23, 1980. That may be true in some abstract, hypothetical sense, but any notion that an asymptomatic undetectable "cancer" without clinical significance is "substantial injury" within the meaning of the limitations statute cannot withstand the recent decision in *Olson v. State Highway Commission*, 235 Kan. 20, 679 P.2d 167, (1984). In that case the Kansas Supreme Court refused to deem one hairline crack in a foundation as substantial when the foundation later developed 14 or 15 floor to ceiling cracks. As the *Olson* court put it, "[o]ur statutes of limitation were not designed to force injured parties into court at the first

---

**2.** A vastly higher proportion of asbestosis-afflicted individuals—as many as 12–15%, *see Wilson, supra,* 684 F.2d at 120 n. 45—eventually contract mesothelioma; it follows that the *Wilson* reasoning is even stronger in a DES case than an asbestos case.

sign of injury, regardless of how slight it might be, just because that injury and damages resulting therefrom may be permanent in nature." *Id.* at 27, 679 P.2d 167. Invisible, preclinical, asymptomatic cellular changes, which can be seen only through the vigorous exercise of 20–20 speculative hindsight, cannot, in reason and fairness, be deemed to trigger the running of the statute.

IT IS ACCORDINGLY ORDERED this 9th day of July, 1984, that the motion for summary judgment by defendant E.R. Squibb & Sons, Inc. be denied, and that partial summary judgment be granted in favor of plaintiffs on the limitations issue.