(798 P.2d 495)
No. 64,511

IONA RUTH GILGER, DENNIS J. MCGRAW AND KATHRYN ANN MCGRAW, as Individuals; and DENNIS J. AND KATHRYN ANN MCGRAW, as Guardians and Natural Parents of JARRETT JOE MCGRAW, MARRILEE ANN MCGRAW, AND BRETT D. MCGRAW, *Appellants*, v. LEE CONSTRUCTION, INC.; UNGER HEATING AND AIR CONDITIONING; AND PEOPLES NATURAL GAS COMPANY, *Appellees*.

Opinion filed September 14, 1990.

*Larry E. Gregg*, of Hamilton, Gregg, Barker & Johnson, of Topeka, for the appellants.

*James T. McIntyre*, of McMaster & McMaster, of Wichita, for appellee Lee Construction, Inc.

*Lisa A. Beran*, of Turner & Boisseau, Chtd., of Great Bend, for appellee Unger Heating and Air Conditioning.

*E. Edward Brown* and *John D. Osborn*, of Calihan, Brown, Osborn, Burgardt & Wurst, of Garden City, for appellee Peoples Natural Gas Company.

Before LEWIS, P.J., RON ROGG, District Judge, assigned, and RICHARD W. WAHL, District Judge Retired, assigned.

LEWIS, J.: The plaintiffs appeal from the granting of summary judgment on behalf of the defendants. The trial court held that the plaintiffs' claims against the defendants were barred by the statute of limitations and granted summary judgment in favor of all of the defendants as to the adult plaintiffs and summary judgment in favor of the defendants Lee and Unger as to the minor plaintiffs.

After a careful review of the record in this case, we have concluded that the trial court erred in granting summary judgment in favor of the defendants, and we reverse and remand.

The plaintiffs' action contended that the defendants were responsible in a variety of ways for the injuries sustained by plaintiffs. These injuries, they allege, were caused by their inhalation of carbon monoxide fumes from 1981 to 1987.

The genesis of this lawsuit occurred in the year of 1977. In that year, the defendant Lee Construction Inc., (Lee) as general contractor, built a home in Garden City. The defendant Unger Heating and Air Conditioning (Unger) installed a two-furnace heating system in the house. The home was completed on August 1, 1977, and that was the last date on which the defendant Lee had any contact whatsoever with the furnace in question. The furnace was improperly vented on its installation and this condition existed from August 1, 1977, until sometime in 1987. When

the house was completed, it was first sold to a Mr. Cantrell, who began to occupy it on August 1, 1977. There is no indication in the record whether Mr. Cantrell suffered any ill effects during the period of time he lived in the house.

In 1981, the McGraws purchased the house and began to occupy it along with their minor children. Kathryn McGraw began to feel ill during her first year of occupying the home, and her illness continued at least until November 24, 1987. Iona Ruth Gilger, the mother of Kathryn McGraw, moved into the home to live with the McGraws sometime in 1984 and almost immediately began to feel ill. By October 1985, every member of the household was experiencing some degree of ill health.

Although all members of the McGraw family became ill during their occupancy of the home, Kathryn McGraw experienced the most dramatic symptoms. She consulted with a number of physicians in an effort to determine the cause of her symptoms, which included headaches, nausea, dizziness, numbness, accelerated heart rate, hallucinations, extreme menstrual pain, shortness of breath, itching, sleep disturbances, and loss of memory. She consulted various medical experts to determine the cause of her illness, including gynecologists, internal medicine specialists, heart specialists, and urologists. At various times, Kathryn McGraw suspected or was told she was suffering from multiple sclerosis, gall bladder poisoning, Alzheimer's disease, schizophrenia, and various "female" conditions. She consulted physicians in Garden City and Hutchinson, Kansas; LaJunta and Pueblo, Colorado; and Dallas, Texas. In addition to all of the disease processes Kathryn McGraw suspected for causing her problems, she suspected that the house in which she and her family were living might be contributing to her symptoms. Indeed, at various points in time, Kathryn McGraw suspected the source of her problems may have been the furnace located in the home.

In addition to consulting various physicians in an effort to determine the cause of her illness, Kathryn McGraw also contacted Unger and Peoples Natural Gas Company (Peoples) and requested that they check the furnace in the house. Peoples first checked the furnace in October 1982 and reported that it was operating properly. Again, in October 1985, both Peoples and Unger

checked the furnace, at the request of the McGraws, and again reported that it was working properly. On one of the occasions, some malfunction was found with the furnace, but, at the same time, inspection revealed the presence of a bird's nest in the venting system, which was removed. At no time did Peoples or Unger indicate the furnace was not properly vented.

In the present action, which was filed on November 16, 1987, plaintiffs alleged that the defendants Lee and Unger were negligent in designing and installing the heating system, causing plaintiffs to be exposed to toxic gases. The petition further alleged that Peoples was negligent in failing to find or correct that problem.

The defendants filed a motion for summary judgment and, after due consideration, the trial court granted that motion. The court found the plaintiffs knew or should have reasonably ascertained prior to November 16, 1985, that they had suffered substantial injuries caused by the negligent acts of the defendants. It held that the statute of limitations had run on their causes of action prior to the filing of the petition on November 16, 1987. The trial court also held that the minor plaintiffs were barred from bringing causes of action against the defendants Lee and Unger. The court determined that the minors' causes of actions accrued on August 1, 1977, and became time barred on August 1, 1985. It also appears that the trial court may have concluded that, as to the adult plaintiffs, the ten-year "discovery" period established by K.S.A. 1989 Supp. 60-513 began to run on August 1, 1977.

## WHEN WAS THE "FACT OF INJURY" REASONABLY ASCERTAINABLE?

The first issue deals with the application of K.S.A. 1989 Supp. 60-513(a) and (b) to the facts involved. The parties all agree that the plaintiffs' action was one sounding in tort for negligence and was governed by the two-year statute of limitations set forth in K.S.A. 1989 Supp. 60-513. (The question of the cause of action of the minor plaintiffs is dealt with later in this opinion.) To resolve this issue, we must determine what knowledge is required for a "fact of injury" to become "reasonably ascertainable."

K.S.A. 1989 Supp. 60-513(b) provides in pertinent part:

"Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

In essence, if the "fact of injury" is immediately ascertainable, the statute begins to run on that date. If the "fact of injury" is not reasonably ascertainable, then the statute of limitations does not begin to run until the fact of injury is or should be reasonably ascertainable.

The term "fact of injury" is a term of art and has not been interpreted literally by the courts of this state. There are a number of cases where the plaintiffs knew that something was wrong or knew that there was an injury, but did not know what caused that injury. In those cases, the Kansas courts have interpreted the term "fact of injury" to be that point in time when a plaintiff knew or should have known he had an injury *caused by the negligence* of the defendant.

In *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649 (1971), the facts indicated that the plaintiff had been undergoing radiation treatment for Hodgkins' disease. She had discovered a burn on her skin which was not healing. She knew that she had an injury but, when she consulted her physicians, they assured her that the condition was a normal result of the treatment and that it would heal itself. These reassurances were such that she delayed consulting another physician for some period of time. When the plaintiff finally received a "second opinion," she was advised that her injury was the result of negligent x-ray treatments and that it would not heal itself. In discussing when the "fact of injury" became reasonably ascertainable, the court stated:

"We believe a fair analysis of the testimony of the three physicians deposed clearly indicates that as of March 13, 1966, none of them had made a diagnosis or prognosis of plaintiff's condition in terms of substantial injury since it was too early to do so with reference to the time of the treatments and the healing condition of plaintiff at the time. We do not believe that plaintiff's knowledge of her condition from her own observation, and that

acquired from her physicians, is sufficient to justify a determination, as a matter of law, that *she knew or could have reasonably ascertained on March 13, 1966, that she had suffered substantial injury caused by the alleged negligent treatment of defendants."* 208 Kan. at 92. (Emphasis added.)

In *Knight v. Myers*, 12 Kan. App. 2d 469, 748 P.2d 896 (1988), this court dealt with a case of legal malpractice. One of the issues was when the injury was reasonably ascertainable. This court, in Syl. ¶ 4, held as follows: "An injury is reasonably ascertainable when the plaintiff knew, or could reasonably have been expected to know, of the alleged negligence."

In *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985), the Supreme Court dealt with a malpractice action. The evidence indicated that, as a result of prostate surgery, the plaintiff was told he would be temporarily incontinent and impotent. This prediction proved to be correct, but plaintiff later learned that his condition would be permanent and was the result of negligence on behalf of the defendant surgeons. The defendants argued that, since the plaintiff was both incontinent and impotent immediately after surgery, the "fact of injury" was apparent, and the statute of limitations began to run immediately. In rejecting this argument, the Kansas Supreme Court reasoned:

"The present statute provides that a cause of action against a health care provider accrues at the time of the occurrence of the act 'unless the fact of injury is not reasonably ascertainable until some time after the initial act.' In this case the initial surgery was performed May 19, 1978. The second opinion, that of Dr. Bass, was received on September 22, 1979. This action was commenced on August 14, 1980. The issue, then, was whether the fact of injury became reasonably ascertainable to the plaintiff immediately following the initial surgery. Defendant contends that as plaintiff was both incontinent and impotent immediately following that surgery, the fact of injury was reasonably ascertainable to him. This contention, however, overlooks the evidence that Dr. Wong, as well as plaintiff's personal physician, advised the plaintiff that temporary incontinence and impotence were normal immediately following TUR surgery. *Thus, while plaintiff knew he was both incontinent and impotent immediately after the surgery, he had no reason to suspect that those conditions were permanent or that those conditions were the result of any negligence or malpractice on the part of the defendant."* 237 Kan. at 414. (Emphasis added.)

The defendants in this case argue that the term "fact of injury" should be applied literally. They insist that plaintiff Kathryn McGraw knew she was ill, knew something was wrong, and knew

she was "injured" shortly after moving into the house in 1981. The defendants reason that, under these circumstances, the "fact of injury" was known almost immediately and the statute of limitations started to run at that time as to her and, as to each of the other plaintiffs, on the date they became ill. They cite *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984), and *Friends University v. W. R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980), as authority in support of their argument. We do not agree.

*Roe* and *Friends* are both factually distinguishable from the instant matter. In *Roe*, the plaintiff was in an automobile accident in which the defendant was the driver of the other vehicle. The plaintiff's injuries were immediately apparent, as were the cause of those injuries—the negligence of the defendant. *Friends* involved a leaking roof wherein the plaintiff knew from the first rain after the roof was completed that it leaked and also knew immediately that the cause of the leak had to be defective materials or workmanship, or both. In fact, the court in *Friends* clearly distinguishes it from cases where the injuries were to the body of a plaintiff. *Roe* and *Friends* both stand for the proposition that the statute of limitations begins to run at the time both the fact of injury and the cause of injury are reasonably ascertainable. In those cases, plaintiffs attempted to extend the statute of limitations by arguing that, while the fact of injury was apparent to them, the extent of the injury was not. The court rejected that argument, holding that the key issue was the fact of injury, not the extent of injury. However, the court did so under a factual scenario where both the fact and cause of the injuries were immediately ascertainable to the plaintiffs.

We have been unable to uncover a Kansas decision which holds that the knowledge of the *fact of injury alone* was held to trigger the running of the statute of limitations. There are cases such as *Roe* and *Friends* where the language employed in the opinion would, if taken out of context, support that proposition. Those cases must be read in the light of the facts which underlie the decisions. In those decisions in which the plaintiff was aware of an injury or illness, but was unaware of who or what caused the problem, ascertainment of the "fact of injury" was not held to

occur until the plaintiff could identify the cause of the problem and file suit against an identifiable defendant.

After a careful analysis of the Kansas cases pertaining to the issue, we hold that the "fact of injury" is not reasonably ascertainable until the plaintiff has discovered that a substantial injury has been sustained and has discovered that the cause of that injury is the negligence of the defendant. In the instant matter, our holding means that the statute of limitations did not begin to run until the plaintiffs knew, or should have known, their health problems were caused by the negligence of the defendants.

## WAS SUMMARY JUDGMENT PROPER?

In the instant matter, the trial court held that, as a matter of law, plaintiffs should have ascertained the "fact of injury" more than two years prior to November 16, 1987, and granted defendants summary judgment on the ground that plaintiffs' cause of action was time barred.

Summary judgment forecloses access of a litigant to the trier of facts, which many in our society consider to be their "day in court." The rules on the granting on this extraordinary remedy are well known, and we believe it should be approached with some trepidation in cases where the issue may turn on what a party's perception should or should not have been. In *Busch v. City of Augusta*, 9 Kan. App. 2d 119, Syl. ¶¶ 2-3, 674 P.2d 1054 (1983), we said:

"A motion for summary judgment under the provisions of K.S.A. 60-256(c) is to be sustained only where the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering such a motion the movant's adversary is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where the facts presented in the motion are subject to conflicting interpretations or reasonable persons might differ as to their significance, summary judgment is improper. It is only when it can be said that reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law. Summary judgment should never be granted merely because the court may believe movant will prevail if the action is tried on the merits."

"An appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. Factual infer-

ences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will not lie. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed."

When we review this record and apply the rules set forth above, we conclude that summary judgment was improper on the issue of the statute of limitations.

The question for determination is: When did the plaintiffs first ascertain that they had sustained substantial injuries as a result of the negligence of the defendants? This question can only be resolved by sifting through the thought processes of these plaintiffs and making a determination as to when they should have perceived that the negligence of the defendants was the underlying cause of their illness. Under the facts of this case, that judgment cannot be made as a matter of law.

There are indications that at various times from 1981 to 1987 Kathryn McGraw suspected that the house was somehow involved in causing her symptoms. Indeed, there were occasions when she suspected and told others that the family was being poisoned by fumes from the furnace, and there were times she told others she suspected "carbon monoxide poisoning." The defendants wish to seize upon these occasions and brand them as the date on which Kathryn knew or should have known that their negligence was causing the illness of the plaintiffs.

At the same time as Kathryn was suspecting the house, however, she suspected various other causes for her illness. During the time frame involved in these facts, she consulted various physicians, had a hysterectomy, and was told she suffered from gall bladder poisoning and might have multiple sclerosis.

The record indicates that, when the plaintiffs perceived the furnace as a possible cause of their problems, they called in Peoples and Unger to check out the operation of the furnace. At no time did Peoples or Unger advise plaintiffs that their furnace was improperly vented or that it was exposing them to toxic gas fumes. To the contrary, after each inspection, the plaintiffs were advised the furnace was working properly.

Based upon all of these factors, we are unable to conclude when the plaintiffs should have become aware of the negligence

of the defendants. How much reliance could Kathryn McGraw place on the various diagnoses she received as to the cause of her illness? Were the plaintiffs entitled to rely on defendants' assurances that the furnace was working properly, and to what extent did those assurances delay plaintiffs in ascertaining the true cause of their problems? We cannot answer those questions, and yet they must be resolved, or at least considered, in determining when the statute of limitations began to run in this case.

In *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, the court held:

"Summary judgment may be proper on the affirmative defense of the statute of limitations where there is no dispute or genuine issue as to the time when the statute commenced to run. [Citations omitted.] But where the evidence is in dispute as to when substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact." 208 Kan. at 93.

In *Hecht*, the plaintiff knew she had a serious burn, but her doctors advised her it was a normal result of medical treatment and would heal itself. This reassurance satisfied the plaintiff, who did not seek a second opinion until a substantial time later. It was as a result of that second opinion that the defendant's negligence became apparent, but the second opinion was rendered more than two years after plaintiff first became aware that she had a serious burn.

In the instant matter, the defendants' reassurances to plaintiffs about their furnace were such that it was not until the plaintiffs sought a "second opinion" that the improper venting was discovered. Plaintiffs argue that the statute of limitations did not begin to run until they had discovered the defendants' negligence on November 24, 1985. We are not holding that the plaintiffs are correct in their argument, but we are holding that it does create a genuine issue of fact.

In *Cleveland v. Wong*, 237 Kan. 410, the evidence indicated that plaintiff had been assured by his physicians that his condition was the normal result of treatment. Thus reassured, the plaintiff did not discover that his injuries were the result of defendant's negligence until he sought a second opinion some time later. Based on these facts, the Supreme Court held, in Syl. ¶ 2: "Where there is conflicting evidence as to when a cause of action

for medical malpractice is deemed to have accrued under K.S.A. 60-513(c), the matter becomes an issue for determination by the trier of fact."

In this case, the "fact of injury" was not reasonably ascertainable until plaintiffs linked their symptoms to the improperly vented furnace. We cannot say, as a matter of law, when that linkage occurred or when it should have occurred. When viewed in the light most favorable to the plaintiffs, the evidence can be said to show that plaintiffs were misled and delayed from discovering that linkage by the assurances of the defendants Peoples and Unger that the furnace was working properly. There are also the various medical diagnoses to consider and what effect, if any, they had on the failure of the plaintiffs to discover defendants' negligence at an earlier time. As a result, we hold that determination of this issue as a matter of law was error. To resolve this issue, complex questions of fact must be determined, and we hold that this is an issue which must be submitted to, and determined by, the trier of fact.

## WERE THE CAUSES OF ACTION OF THE MINOR PLAINTIFFS BARRED BY K.S.A. 60-515?

The trial court held that the causes of action of the minor plaintiffs against the defendants Lee and Unger were barred by the provisions of K.S.A. 60-515(a). This statute reads:

"If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than *eight years after the time of the act giving rise to the cause of action.*" (Emphasis added.)

The defendants argued, and the trial court agreed, that, as to defendants Lee and Unger, the "time of the act giving rise to the cause of action" was August 1, 1977, the date the house was completed. As a result, the eight-year time period set forth in 60-515(a) ran on August 1, 1985, and the cause of action of the minor plaintiffs was held to be barred by that statute.

It also appears that the trial court may have been laboring under the belief that the ten-year "discovery period" set forth in K.S.A. 60-513 also began to run on August 1, 1977, as to the adult plaintiffs. That conclusion was not critical to the decision of the court as it relates to the adult plaintiffs and, hence, creates uncertainty as to the court's position. In order to avoid any confusion on remand of this case to the trial court, our decision with regard to the minor plaintiffs will apply with equal force to the ten-year period set forth in K.S.A. 1989 Supp. 60-513 that is applicable to the adult plaintiffs.

The question for our resolution is: How do we define the phrase "time of the act giving rise to the cause of action?" The defendants and the trial court have applied a literal construction of that phrase in holding that the act giving rise to the cause of action took place on August 1, 1977. This was the last date on which Lee and Unger were involved in installing the furnace. This application of the statute means that one-half of the eight-year period provided for the minor plaintiffs to file suit had expired *before those minor plaintiffs were exposed to the alleged negligent actions of the defendants and before the minor plaintiffs had a cause of action against the defendants.* We do not agree with this construction.

Just as air cannot exist in a vacuum, a cause of action cannot arise in one. In order for a plaintiff to have a cause of action against a defendant, two things must occur: (a) The plaintiff must have been injured; and (b) some entity or individual must have committed a wrongful act which caused the injuries to plaintiff. In our system, the mere fact of injury does not, standing alone, give rise to a cause of action. It is equally true that an act of negligence, standing alone, which causes no damage does not subject a defendant to litigation for committing that lone negligent act. It is only when the wrongful, negligent action damages another that a cause of action arises and subjects a defendant to liability.

It is true that in the instant matter the improper venting of the furnace must have occurred no later than August 1, 1977. However, since the plaintiffs did not move into the home in question until 1981, the defendants' act of negligence did no harm to the plaintiffs until 1981, and plaintiffs had no possible cause

of action against the defendants until 1981 at the very earliest. No cause of action arose in favor of these plaintiffs against the defendants on August 1, 1977, and, as a result, no act giving rise to a cause of action could possibly have occurred on that date.

In reaching this decision, we rely on three cases: two decided by federal district courts and one, the ultimate decision, decided by the Kansas Supreme Court.

In *Colby v. E.R. Squibb & Sons, Inc.*, 589 F. Supp. 714 (D. Kan. 1984), plaintiff filed suit, alleging that the manufacturer of Diethylstilbestrol (DES) had caused her vaginal cancer. The evidence indicated that the plaintiff's exposure to DES occurred *prior to her birth* in 1952. The facts indicated that the mother of the plaintiff had taken DES during her pregnancy with plaintiff to forestall a threatened miscarriage. Thus, the plaintiff's exposure to the drug DES, which she contended caused her cancer, occurred while she was still in the womb. The defendant argued that the ten-year "discovery clause" in K.S.A. 60-513(b) had run long before plaintiff's action was filed. On this basis, the defendant filed a motion for summary judgment. The federal district court, in rejecting the defendant's contention, held that the ten-year statute did not begin to run until plaintiff first sustained substantial injury, stating:

"While it is possible that the Kansas Legislature had a perverse intent when it enacted K.S.A. 60-513(b) in 1963, it is at least as reasonable to suppose that when it chose to employ the inelegant phraseology 'time of the act giving rise to the cause of action' it intended to focus on when the defendant caused injury that could, at least in principle, be detected, rather than when the defendant loosed its negligence into the air." 589 F. Supp. at 716.

In *Cowan by Cowan v. Lederle Laboratories*, 604 F. Supp. 438 (D. Kan. 1985), plaintiffs brought suit on behalf of their minor daughter, whose teeth had allegedly been turned gray by her ingestion of tetracycline manufactured by the defendant. The action was filed in 1984, and the evidence showed that the minor plaintiff had begun to ingest the drug in 1968, had her last prescription for it in 1975, and may, in fact, have ingested it last in 1980. The court was faced with construing both K.S.A. 60-513(b) and 60-515(a) in order to determine when the "time of the act giving rise to the cause of action" occurred. In resolving this issue, the court rejected the date of "substantial injury"

adopted in *Colby* and held that the date of "substantial injury" was the date on which the minor last ingested tetracycline. The court held that:

"As to Lisa Cowan, the two-year statute of limitations is also tolled by K.S.A. 60-515(a). At the time this suit was filed, Lisa was under 18 years of age. She was thus able to bring this action regardless of when she could reasonably have ascertained that she had been injured. The only circumstance under which she might lose the protection of this provision is if the 'act giving rise to the cause of action' occurred more than eight years prior to the date suit was filed. Under plaintiffs' version of the facts, the act giving rise to the cause of action (Lisa's ingestion of tetracycline) occurred in 1980. That was less than eight years prior to the filing of this suit, on March 9, 1984. For purposes of this motion, we must accept the 1980 date as correct. Should defendant establish that Lisa's last ingestion was actually in 1975, however, more than eight years *would* have elapsed between that ingestion and the filing of this suit—thus depriving Lisa of this provision's protection." 604 F. Supp. at 443.

In *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989), the Kansas Supreme Court chose the approach adopted in *Cowan*. That case was one in which the federal district court had certified a question to the Kansas Supreme Court of whether the ten-year limitation of 60-513(b) applied to claims involving latent diseases. The facts indicated that the plaintiff had been exposed to asbestos manufactured by the defendant and that his last exposure had occurred in 1971. The plaintiffs' injuries due to the exposure did not become reasonably ascertainable until 1986, some 15 years after the last exposure. The Supreme Court held that the ten-year limitation did apply to latent diseases and that the date of the "act giving rise to the cause of action" occurred on the defendant's last exposure to asbestos in 1971, and his cause of action was time barred ten years thereafter. The court reasoned as follows:

"Whether the ten-year limitation contained in K.S.A. 60-513(b) applies to the plaintiff's cause of action must be resolved by an analysis of the Kansas statute. As noted in Judge Kelly's order of certification, the federal district court decisions interpreting subsection (b) have yielded different results. The plaintiff, citing *Colby v. E.R. Squibb & Sons, Inc.*, 589 F. Supp. 714 (D. Kan. 1984), argues that the ten-year limitation does not begin until the person bringing the action has received a substantial injury. Thus, he argues that the ten-year limitation did not begin to run upon his last exposure to asbestos in 1971, but upon the diagnosis of his asbestos-related injury in 1986.

"The ten-year limitation contained in K.S.A. 60-513(b) begins at 'the time of the act giving rise to the cause of action.' In *Colby*, this phrase was interpreted to mean the date on which the plaintiff received a substantial injury and not the date of the defendant's action.

"Chief Judge Earl E. O'Connor reached a different conclusion in *Cowan by Cowan v. Lederle Laboratories*, 604 F. Supp. 438 (D. Kan. 1985). In *Cowan*, the court, citing the analysis of Judge Rogers in *Purcell v. Abbott Laboratories*, No. 81-4237 (D. Kan., *unpublished*, June 2, 1982), held that the phrase 'the act giving rise to the cause of action' meant the date of the exposure of the injured party to the allegedly harmful substance, and not the date of the subsequent substantial injury.

. . . .

"While it is possible to interpret the last clause of subsection (b) in isolation so that the ten-year maximum limitation period does not commence until the time of substantial injury, this interpretation requires separate and different interpretations of the phrase 'the act giving rise to the cause of action.'

" 'It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious, and sensible if that can be done without doing violence to plain provisions therein contained.' *State, ex rel., v. Kalb*, 218 Kan. 459, 464, 543 P.2d 872 (1975), *modified* 219 Kan. 231, 546 P.2d 1406 (1976). The various provisions of a statute should be construed together to result in consistency rather than inconsistency, if it is reasonably possible to so construe them. *Terrill v. Hoyt*, 149 Kan. 51, 55, 87 P.2d 238 (1939). In the present case, a consistent interpretation of the phrase 'the act giving rise to the cause of action,' as the phrase is used in the separate clauses of K.S.A. 60-513(b), requires interpreting the phrase to mean the defendant's wrongful act, rather than the occurrence of a substantial injury.

"Applying this interpretation to the instant case, we conclude that the ten-year limitation contained in subsection (b) began, at the latest, upon the last exposure of the plaintiff to asbestos produced, sold, and distributed by the defendants in 1971." 244 Kan. at 479-81.

If the *Tomlinson* court had intended to adopt the approach taken by the defendant, it would have literally construed the term "act giving rise to the cause of action." Such a construction would hold it to have been the date on which the asbestos was manufactured, as this was literally the earliest wrongful act leading to plaintiffs' injuries. Instead, the court followed a non-literal interpretation of the term. It held that the "act giving rise to the cause of action" accrued when plaintiffs' injuries were last caused by defendant's negligent act even though those injuries may not have been readily apparent. This is consistent with the decision in *Cowan* in which the "act giving rise to the cause of action" was held to be the plaintiff's last ingestion of tetracycline rather

than on the date which the defendants had manufactured the product.

Although the court in *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974), held the ten-year provision not applicable, it remains an instructive case. In that case, the defendants had built a house and installed a water heater in 1959. The plaintiffs had purchased the house in 1969 and, in 1970, there was a fire and explosion which destroyed the house and caused the plaintiffs' injuries. The plaintiffs filed suit in 1972, alleging that the cause of the explosion and fire was negligence by the defendants in building the house and installing the water heater in 1959. The defendants argued that the "act giving rise to the cause of action" occurred in 1959 when the house was built and the water heater installed. The plaintiffs argued that such a construction would have the effect of foreclosing the plaintiffs' action before the cause of action accrued. The court held that the ten-year limitation simply did not apply in cases where the fact of injury was immediately ascertainable, thus avoiding the construction advocated by the defendant.

While the facts of each case differ, we have found nothing to indicate that the Kansas Supreme Court has held that a cause of action might accrue prior to the time that a plaintiff came into contact with the defendant's wrongful act. In fact, in all of the cases cited above, that construction has been scrupulously avoided. In both *Cowan* and *Tomlinson*, the literal wrongful act occurred when the defendants manufactured the offending product. Yet, in each case, the time that the "act first gave rise to the cause of action" was held to be that date when the plaintiff last had contact with and was injured by the defendant's product.

We hold that, under the facts of this case, the "act which first gave rise to the cause of action" occurred in 1981 when plaintiffs moved into the house and were first exposed to the negligence of the defendants. The construction offered by the defendants would result in a cause of action accruing *before* the plaintiffs came into contact with the defendants' negligence. This not only leads to a bizarre result, but it ignores the basic principles of tort law. The Supreme Court in *Ruthrauff* said:

"The time when a cause of action accrues and can be commenced has acquired an appropriate meaning in the law of Kansas. The terminology

'when a cause of action has arisen' and 'when a cause of action has accrued' are synonymous. Both phrases designate that first point in time when one party has the right to sue another for damages suffered. See *Bruner v. Martin*, 76 Kan. 862, 866, 93 Pac. 165, and *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605." 214 Kan. at 188.

Our construction of the phrase "act giving rise to the cause of action," as having occurred on the date plaintiffs were first exposed to defendants' negligence, is consistent with the definition offered in *Ruthrauff* above. This was the first possible point in time in which plaintiffs had the right to sue the defendants. The minor plaintiffs had eight years from this date to discover their injuries and the cause of their injuries and sue the defendants; the adult plaintiffs had ten years. Since that period began in 1981, it follows that suit filed in 1987 was well within the eight- and ten-year periods of discovery.

Reversed and remanded for proceedings consistent with this opinion.