Catherine Ann BENNE and John H. Benne, Plaintiffs,

v.

INTERNATIONAL BUSINESS MACHINES, and Gateway 2000, Inc., Defendants.

No. 94–1181–PFK.

United States District Court, D. Kansas.

Oct. 18, 1994.

Albert L. Kamas, Render, Kamas & Hammond, Wichita, KS, Steven J. Phillips, Danielle Goodman and Moshe Maimon, Levy, Phillips & Konigsberg, New York City, for plaintiff.

Theresa M. Connors, James F. Duncan and Katherine J. Rogers, Watson & Marshall, L.C., Kansas City, MO, and Joseph A. D'Avanzo and Michael A. Cerussi, Jr., Cerussi & Spring, White Plains, NY, for defendant IBM.

Trisha A. Thelan and Jeff P. DeGraffenreid, Foulston & Siefkin, Wichita, KS, for defendant Gateway.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

The present action was filed by plaintiffs Catherine and John Benne on December 18, 1992. It was initially filed in the United States District Court for the Eastern District of New York. The action was subsequently transferred to this court pursuant to 28 U.S.C. § 1404(a). Both defendants in the present action, International Business Machines and Gateway 2000, Inc., have filed motions for summary judgment contending that the Bennes' action is time barred as a result of the operation of both Kansas law and the law of New York. K.S.A. 60–513; N.Y.Civ.Prac.L. & R. 214.

■ Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

■ In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical

doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The plaintiffs, while making no attempt in their written response brief to argue that the present action would not be barred by New York limitations law, nonetheless contended at oral argument on the present motions that the action is timely under the law of New York.[1] The court cannot agree. The three-year New York statute of limitations "begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury." *Schmidt v. Merchants Despatch Transp. Co.,* 270 N.Y. 287, 300, 200 N.E. 824, 104 A.L.R. 450 (1936). This rule has been held to apply specifically to, and thereby bar, repetitive stress injury cases such as the present action. *See In re New York County Data Entry Worker Product Liability Litigation,* Index No's 499000/93, 23720/92 (N.Y.Sup.Ct. Apr. 16, 1994); *Wallen v. American Telephone & Telegraph,* Index No. 12336/91 (N.Y.Sup.Ct. Sept. 17, 1992), *aff'd,* 195 A.D.2d 417, 601 N.Y.S.2d 796 (1993).

The Bennes argue that Kansas limitations law applies because the defendants waived any protection under the New York law by transferring the case to Kansas pursuant to § 1404(a), and under New York's choice of law rules, a New York court would in any event apply the Kansas statute of limitations as the law of the jurisdiction where the action arose. These arguments are not supported by the law or by the circumstances of the present case.

When an action is transferred pursuant to § 1404(a), the transferee court must apply the statute of limitations of the transferor. *Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Benne supports her claim of waiver or estoppel by citing decisions rendered prior to *Van Dusen* and *Ferens. See, e.g., Greve v. Gibraltar Enterprises, Inc.,* 85 F.Supp. 410, 414 (D.N.M. 1949). The continued validity of such decisions in the wake of *Van Dusen* and *Ferens* is dubious.

More importantly, and contrary to the argument advanced by the plaintiffs, there is no evidence in the present record to support the asserted waiver or estoppel. There is no evidence that the defendants intentionally waived their right under *Ferens* to the application of New York limitations law. While there are references in the pleadings of the defendants to the general applicability of Kansas general substantive law, none of these references include any direct statement that Kansas limitations law should be substituted for New York law, contrary to the general rule in such transfers. The record is devoid of any suggestion that the defendants knowingly waived the transferor's limitations law. Nor is there any evidence that such a representation, relating specifically to the statute of limitations, played any decisive role in the decision to transfer the case.

The plaintiffs' argument that a New York court would nonetheless apply Kansas limitations law pursuant to New York choice

---

1. Also, for the first time at oral argument, the plaintiffs advanced the argument that Catherine Benne was suffering additional injuries from continued exposure to the defendants' equipment, citing the plaintiffs' complaint. While the complaint asserts that Catherine Benne "ultimately sustained, and continues to sustain" certain injuries, there is no direct allegation of additional, identifiable damages occurring within the limitations period. Moreover, it must be remembered that in response to a motion for summary judgment a party may not rely upon her initial pleadings. Fed.R.Civ.P. 56. While the brief submitted by Gateway describes Benne's injuries as arising by 1987 at the latest, the response brief of the plaintiffs is utterly silent upon each point, and makes no attempt to document the existence of any additional injuries.

of law rules is equally incorrect. New York, like many states, including Kansas, possesses a "borrowing statute." N.Y.Civ.Prac.L. & R. 202 provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Because the Bennes are not residents of New York, the effect of this provision is to require the present action to comply with the limitations requirements of both New York and Kansas. The action is barred in New York if it would be considered untimely under either New York or Kansas law. As noted earlier, the action would be considered untimely under the law of New York.

The court also finds that in any event the action would also be barred under the law of Kansas. In their brief, the Bennes rely in particular upon the decision of the court of appeals in *Gilger v. Lee Constr. Inc.*, 14 Kan.App.2d 679, 798 P.2d 495 (1990), *aff'd in part, rev'd in part*, 249 Kan. 307, 322, 820 P.2d 390 (1991). In *Gilger*, a family sued the designer and installer of their home's heating system, as well as their natural gas supplier, in 1987 for long-term exposure to carbon monoxide. The family had experienced substantial health problems beginning in 1982. They contended, however, that they did not discover these problems were caused by their heating system until 1985, within two years of the date they filed suit.

The court of appeals reversed the trial court's grant of summary judgment on the issue of the statute of limitations, stating that the statute could not begin to run "until the plaintiff has discovered that a substantial injury has been sustained and has discovered that the cause of that injury is the negligence of the defendant." 14 Kan.App.2d at 686, 798 P.2d 495.

On appeal, the supreme court affirmed. The court distinguished decisions relied upon by the defendants, such as *Friends University v. W.R. Grace & Co*, 227 Kan. 559, 608 P.2d 936 (1980), and *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984), where the statute was deemed to have run against the plaintiffs. In those cases, the *Gilger* court concluded, the plaintiffs may not have been fully aware of the extent of their injuries, but "the parties whose negligence caused the injuries were immediately known and the injuries were ascertainable within a short period of time," and thus the statute had commenced to run. 249 Kan. at 322, 820 P.2d 390. In contrast, the court stated, in the case before it there were disputed facts "as to when the appellants realized their health problems were associated with the alleged improperly ventilated furnace." *Id.* In reaching this conclusion, the court cited previous decisions, in which the statute was deemed not to have commenced to run, where the plaintiff, while aware of the fact of injury, had yet to discover the connection between the injury and the alleged negligence of the defendant. 249 Kan. at 319–321, 820 P.2d 390 (quoting, and adding emphasis to, *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985); *Hecht v. First National Bank & Trust*, 208 Kan. 84, 490 P.2d 649 (1971); *Miller v. Beech Aircraft*, 204 Kan. 184, 460 P.2d 535 (1969)).

■ However, even under *Gilger*, the present action is still time-barred because the facts establish that the plaintiff knew that her injury was associated with a specific activity more than two years prior to filing the present action. From 1979 to 1992, Benne was employed by Dr. Ernest Schlachter. In her employment, Benne checked in patients, checked their blood pressure, and filed X-rays. However, 50 to 60 percent of her time was spent typing.

In 1984, Benne developed numbness, tingling and swelling in her hand, which she reported to Dr. Schlachter. On November 15, 1985, Schlachter filed a claim with the Kansas Division of Worker's Compensation. This report, typed by Benne, stated that he was retaining Benne as an employee despite knowing that she suffered from "overuse syndrome of both arms" and an additional, congenital abnormality of the spine. On February 28, 1985, Schlachter filed an Em-

ployer's Report of Accident, also typed by Benne, stating that Benne had been injured at work, suffering a "bilateral carpal tunnel tendinitis and left entrapment neuropathy of the elbow of the ulnar nerve. The injury was caused by "repetitive use typing, filing, and other office work."

Schlachter treated Benne, and referred her to treatment by Dr. Tyrone Artz. Benne saw Artz in May 1985, February 1986, and in March or April of 1986. Benne diagnosed Benne's condition as caused by increased typing. He prescribed injections of cortisone, which were paid for as a part of Benne's worker's compensation benefits.

In April of 1987, Benne's typing workload increased. The symptomatology relating to her bilateral carpal tunnel syndrome also increased. On September 23, 1987, Benne filed a claim for worker's compensation. At the hearing on this claim, Benne's counsel stated that her injuries were "aggravated most particularly by typing and other activities around the office."

Schlachter filed another report of accident on October 17, 1987, in which he stated that Benne suffered from bilateral overuse syndrome, as well as thoracic outlet syndrome. The cited cause of the injury was typing.

A second claim for worker's compensation benefits was filed. Testifying in connection with this claim, Benne stated that the pain was so severe that it sometimes woke her up at night. Asked whether she had told Schlachter that her increased pain was caused by increased typing, Benne testified that was correct.

On November 9, 1988, the presiding administrative law judge found a 50% permanent partial disability for Benne's 1987 injuries, and a 6% permanent impairment of her body as a whole due to her injury occurring between 1984 and 1985. The compensation fund was ordered to pay both awards because the employer had knowingly retained a handicapped employee. This conclusion was affirmed on appeal, except that the district court found Benne 70% rather than 50% permanently partially disabled. The court awarded $74,701.01 for her 1987 claim, $5,810.00 for her 1984–85 claim, and $565.00 for medical expenses.

 The uncontroverted facts establish that there was a clear association between Benne's injuries and her employment, and more specifically her typing, by 1987 at the latest. The plaintiff, therefore, was " 'aware of the actual state of [her] health *and the connection between [her] employment and [her] injuries].*' " *Gilger,* 249 Kan. at 320, 820 P.2d 390 (quoting *Miller v. Beech Aircraft Corp.,* 204 Kan. 184, 189–90, 460 P.2d 535 (1969)) (emphasis added by *Gilger* ). Moreover, the fact that Benne may have initially pursued a worker's compensation claim rather than a separate product liability claim should not extend the time for her to bring suit. Where it was clearly apparent that the plaintiff has suffered severe injuries, her "failure to know the exact scientific nature of the problem" will not toll the operation of K.S.A. 60–513. *Id.,* at 321, 820 P.2d 390 (citing *Friends University v. W.R. Grace & Co.,* 227 Kan. 559, 608 P.2d 936 (1980)). Accordingly, the statute of limitations contained in K.S.A. 60–513 had expired by the time the present action was filed in 1992.

IT IS ACCORDINGLY ORDERED this 18th day of October, 1994, that the motions for summary judgment of defendants Gateway 2000 and International Business Machines (Dkt. Nos. 20 & 36) are hereby granted.