No. 57,863

BARNEY KINELL, *et al.*, As Members of the Board of Directors of · Pinebrooke Condominium Association Subdivision and on Behalf of Themselves and All Other Condominium Unit Owners and Members of the Association; COLONIAL INVESTORS, INC.; and SAM DEMARCO, *et al., Appellants,* v. N. W. DIBLE COMPANY; WILLIAM H. HICKOK; DOROTHY R. HICKOK, Administratrix; and Co-trustees of the Trust of John D. Hickok, Deceased, *Appellees.*

(731 P.2d 245)

Opinion filed January 16, 1987.

*Cindy Hoover Reams,* of Jackson, Dillard, Brouillette, Weisenfels, Phillips & Wood, P.C., of Kansas City, Missouri, argued the cause, and *C. Brooks Wood,* of the same firm, and *Mark C. Owens,* of Bornholdt, Landeck & Owens, of Overland Park, were on the briefs for appellees.

*Richard L. Routman,* of Grier & Swartzman, of Kansas City, Missouri, argued the cause, and *Charles M. Thomas,* of the same firm, and *Bernis G. Terry,* of Lowe, Terry & Roberts, of Olathe, were with him on the briefs for appellants.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by members of the Pinebrooke Condominium Association Subdivision Board of Directors (plaintiffs-appellants), individually and on behalf of all other Pinebrooke condominium owners, against the builder-original owners of the complex (N. W. Dible Co. *et al.*) seeking damages resulting from negligent installation of fireplaces in the condominiums. The district court entered summary judgment in favor of the defendants based on the statute of limitations (K.S.A.

60-513), and plaintiffs appealed therefrom. The Court of Appeals affirmed the district court in an unpublished opinion. The matter is before us on petition for review.

At the outset, it should be noted that certain significant facts are in dispute. However, looking at the pleadings and discovery record in the light most favorable to plaintiffs, as we are required to do in reviewing the entry of summary judgment herein, the following would appear to be an appropriate factual statement.

The units comprising the Pinebrooke Condominium were built as apartments in 1968-70. The owner and general contractor was defendant N. W. Dible Co. The general partners in N. W. Dible Co. were William H. Hickok and decedent John D. Hickok. The masonry work in the fireplaces may have been subcontracted to a masonry firm. On December 24, 1969, during construction, a fire broke out in one of the fireplace units. The local fire department was called to the scene. The department's report stated no damage occurred and that a total of ten gallons of water was used to resolve the problem. The same report stated the cause of the fire was "fireplace installed incorrectly." Upon further investigation, it was learned that other units in the complex suffered from the same defect—namely that the brick in the fireplaces was located too close to the underlying wooden flooring structure. This construction was not in accordance with the plans for the structures for which the building permit had been issued, was in violation of the applicable building code (City of Overland Park), and constituted a fire hazard. As a result of this incident, an agreement was entered into between defendant Dible and the Building and Zoning Department of Overland Park whereby Dible agreed to correct the defective construction in the units by installing metal sheets between the fireplace brick and the wooden flooring. The agreed upon remedial work was not done.

The complex was completed and was operated by Dible as an apartment complex until 1979 when it was sold to the Wilson-Mayberry Partnership (not parties herein). Dible did not apprise Wilson-Mayberry of the defective fireplace construction. Wilson-Mayberry operated the complex as apartments for a short period of time and then converted the complex into condominiums. As a result thereof the units passed into individual ownership.

On November 29, 1981, the defective fireplace construction caused a fire in one of the units. The fire department report estimated damage at $1,000 and stated the fireplace had been improperly installed and that "firebrick transmitted heat to subfloor." On December 18, 1981, the following letter was sent by the Community Standards Division of Overland Park to the president of the plaintiff association:

"Mr. Mark Brumback, President
Pinebrooke Homes Association
7627 W. 102 Street
Overland Park, KS
"FIREPLACE CONSTRUCTION IN PINEBROOKE
"The Community Standards Division of Overland Park was notified of a fire at the Pinebrooke Condominiums late in November. During the investigation of this fire, the fireplace hearth was found to have been constructed on the flooring system directly above the fire.
"On December 1, 1981, fireplaces in six units were inspected by Larry Sams the Inspection Supervisor of Overland Park. This inspection revealed that all of the fireplaces and hearths were constructed in a similar manner. The approved plan and the building code enforced at the time of construction required these fireplaces and hearths to be constructed as freestanding structures, independent of the flooring system. The fireplace hearth as constructed at the Pinebrooke Condominiums are a potential fire hazard and corrective action is being required by the Community Standards Division of Overland Park.
"If you have any questions in regard to this matter, please contact the Community Standards Division of Overland Park. Your cooperation in this matter will be appreciated."
/s/ "Larry Sams
LARRY SAMS
INSPECTION SUPERVISOR"

A later letter indicated that not all of the units in the complex contained the faulty construction. The plaintiff-owners of the units with defective fireplaces are being required by the City of Overland Park to expend sums to bring the fireplaces into compliance with the applicable building code and seek, in this action, to recover such sums from defendants on the basis of negligent construction of the fireplaces.

The defendants filed a motion for summary judgment on the basis of K.S.A. 60-513, which provides, in pertinent part:

"(a) The following actions shall be brought within two (2) years;

. . . .

"(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

. . . .

"(b) Except as provided in subsection (c) of this section, the cause of action in

this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Note: Subsection (c) relates to medical malpractice actions and is inapplicable herein.

Specifically, defendants argue that the 1969 fire was when the defective construction first caused "substantial injury" and hence the action herein is barred. Defendants reason that, inasmuch as the negligent fireplace construction was done by Dible's subcontractor, then Dible was a victim of the subcontractor's negligence and had a cause of action against the subcontractor as of the time of the 1969 fire. They argue that the statute of limitations was "triggered" by the 1969 fire and hence had run long before the 1981 fire occurred. The district court agreed that the 1969 fire was the "first substantial injury" within the purview of K.S.A. 60-513 and triggered the running of the statute and entered summary judgment in favor of defendants. On appeal, the majority of the Court of Appeals panel affirmed the district court in an unpublished opinion.

The primary issue before us is the propriety of the entry of summary judgment based upon the statute of limitations. At the time the then apartment complex was being constructed, it was owned by the Dible Company, which also served as the general contractor for the construction. Negligent construction was performed by a subcontractor. The 1969 fire gave notice to Dible of faulty construction which created latent defects in the structures, presenting a continuous fire hazard to the structures themselves as well as to the lives and property of future residents therein. Dible did not correct the dangerous condition, although promising the appropriate municipal regulatory agency that it would do so. Presumably, without the promise, some action would have been taken against Dible to force compliance with the building code. Now Dible seeks to use its knowledge of the defects gained through the 1969 fire and subsequent municipal building inspection to relieve itself of liability by portraying itself as a victim of the same negligence as were plaintiffs. Since Dible did

not sue its own subcontractor within two years after the 1969 fire, it argues plaintiffs are barred from their action against Dible. The argument is not persuasive.

K.S.A. 60-513(a)(4) gives the party injured by a tortfeasor two years after the tort in which to bring the action. The portion of K.S.A. 60-513(b) applicable herein states an injured party's cause of action shall not be deemed to accrue until after the tort first causes substantial injury. Some tortious acts do not cause injury until more than two years after the tortious act occurred. This statutory provision gives the injured party two years to bring an action after he or she has first sustained substantial injury. The ten-year cap contained in K.S.A. 60-513(b) is applicable only where the fact of injury is not reasonably ascertainable until some time after substantial injury occurs. See *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974). In the case before us, the action was brought in less than two years after the 1981 fire, and ensuing official investigation into the cause of the fire resulted in plaintiffs becoming obligated to make expenditures for remedial construction to their fireplaces. Under the facts herein, the "substantial injury" provision in K.S.A. 60-513(b) means when the act giving rise to the injury first caused substantial injury to the plaintiffs. We can foresee a different result could be proper where the injured party stands as a successor to a previously injured party. Illustrative thereof would be where A builds a house for B. While B occupies the home, the roof leaks substantially due to negligent construction. B then sells the home to C, who sustains damage from the leaking roof. If more than two years elapsed between the time the leaks first caused substantial injury to B and the time C was damaged, any action by C against A would be barred, particularly where the defect was not life threatening in nature.

In the case before us, Dible wore two hats in the construction—it was the owner and the general contractor. As the general contractor, it certainly had overall responsibility for proper construction in accordance with the building plans which were the basis for the issuance of the building permit. The structures were intended for human habitation and Dible was aware of a dangerous latent defect in the construction. The fact that the defect in one unit caused a minor fire in 1969 during construction but Dible did not sue the subcontractor actually doing the faulty

work cannot operate. to bar plaintiffs' claims herein. To hold otherwise would result in the ridiculous situation that a builder could defeat claims predicated upon negligent workmanship by a subcontractor arising more than two years after construction by showing it had been damaged during construction by the same negligence. A builder with full knowledge of the dangerous latent defect would thereby escape liability, while a builder with no such graphic knowledge of the defect and the harm it could cause could be liable. This result is wholly inconsistent with the purpose of K.S.A. 60-513(b). We conclude the district court erred in holding the statute of limitations had run on plaintiffs' claims.

For their next issue plaintiffs contend the district court abused its discretion in refusing, after the entry of summary judgment herein, to permit plaintiffs to amend their petition to add a fraud count.

K.S.A. 60-215 governs amendments to pleadings, and provides, in pertinent part:

"(a) *Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The trial court has wide latitude and discretion in permitting or refusing amendments of pleadings and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. *First Nat'l Bank v. Milford,* 239 Kan. 151, Syl. ¶ 5, 718 P.2d 1291 (1986); *McAlister v. Atlantic Richfield Co.,* 233 Kan. 252, 265, 662 P.2d 1203 (1983).

The action herein was commenced on December 6, 1982. Twice the court granted motions to file amended petitions. The motion for summary judgment was filed on May 4, 1984. The district court's decision to grant summary judgment was filed August 23, 1984. Fraud, as a cause of action, was not claimed until after the entry of summary judgment. This was not a situation where plaintiffs were attempting to lock the barn after the horse was gone—rather, they were attempting to construct a barn after the horse had departed. We find no abuse of discretion in the district court's refusal to permit the plaintiffs to add a fraud count to their second amended petition. However, inasmuch as

we have held herein that the entry of summary judgment was improper, the district court's prior ruling should not be deemed to foreclose any renewed request for amendment to the pleadings. The propriety of such amendment should be considered in light of the circumstances existing upon remand.

For their final issue plaintiffs contend the district court erred in not finding defendants were estopped to assert the statute of limitations defense. This issue is rendered moot by our previous determination herein relative to the statute of limitations.

The judgments of the Court of Appeals and district court are affirmed in part and reversed in part, and the case is remanded for further proceedings.

ALLEGRUCCI, J., not participating.