No. 64,511

IONA RUTH GILGER, DENNIS J. McGRAW and KATHRYN ANN McGRAW, as individuals; and DENNIS J. and KATHRYN ANN McGRAW, as guardians and natural parents of JARRETT JOE McGRAW, MARRILEE ANN McGRAW, and BRETT D. McGRAW, minors, *Appellants*, v. LEE CONSTRUCTION, INC.; UNGER HEATING AND AIR CONDITIONING; and PEOPLES NATURAL GAS COMPANY, *Appellees*.

(820 P.2d 390)

Opinion filed October 2, 1991.

*Larry E. Gregg,* of Hamilton, Gregg, Barker & Johnson, of Topeka, argued the cause and was on the brief for appellants.

*James T. McIntyre,* of McMaster and McMaster, of Wichita, argued the cause and was on the brief for appellee Lee Construction, Inc.

*Harry Bleeker,* of Turner & Boisseau, Chartered, argued the cause, and *Lisa A. Beran,* of the same firm, was on the brief for appellee Unger Heating and Air Conditioning.

*E. Edward Brown,* of Calihan, Brown, Osborn, Burgardt & Wurst, of Garden City, argued the cause and *John D. Osborn,* of the same firm, was on the brief for appellee Peoples Natural Gas Company.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

HERD, J.: This is a tort action for injuries sustained by the McGraw family as a result of long-term exposure to carbon monoxide. They contend the heating system in their house was negligently designed and installed by Lee Construction, Inc., (Lee) and Unger Heating and Air Conditioning (Unger). Appellants further allege Peoples Natural Gas Company (Peoples) negligently failed to find or correct the problem.

The district court found the action was barred by the statute of limitations and granted summary judgment in favor of Unger, Lee, and Peoples. Appellants appealed and the Court of Appeals reversed. *Gilger v. Lee Constr., Inc.,* 14 Kan. App. 2d 679, 798 P.2d 495 (1990). We granted the appellees' petition for review.

The following facts gave rise to the controversy: Lee was the general contractor for a residence in Sagebrush Estates, Garden City, Kansas, and Unger, a subcontractor, installed a two-furnace heating system in the residence. All work was completed by August 1, 1977.

The McGraws moved into the residence in 1981. Within the first year of moving into their new home, Kathryn McGraw began to experience health problems. In the next several years she consulted numerous physicians for headaches, nausea, numbness in her arms and legs, digestive problems, menstrual pain, rapid heart rate, joint pain, and hallucinations. Kathryn suspected gas in the house was the source of her health problems, but also attributed the health problems to various other medical conditions. In January 1983, Kathryn's mother, Iona R. Gilger, moved into the McGraws' residence. By October, 1985, all family members living in the house suffered health problems.

In 1982, Peoples sent a serviceman to the McGraw residence to check a purported gas leak in the furnace; however, no leak was discovered. Sometime in 1984 or 1985 the Finney County Sanitarian and Finney County Building Inspector visited the McGraw residence in response to complaints by Kathryn about the heating system. Appellants were advised that fresh-air ventilation was needed in the furnace room. On February 15, 1985,

Unger inspected the McGraws' furnace and flue and discovered a bird's nest which caused the flue to backdraft. Correction of these defects did not stop the health problems.

In mid-October 1985, Howard Sheets began carpentry work on the McGraw residence. Mr. Sheets became ill and suggested to Kathryn that she have the furnace checked for a gas leak. On October 18, 1985, Peoples inspected the McGraw residence for carbon monoxide and natural gas. Peoples found the furnace operated properly. On October 23, 1985, Unger once again checked the McGraws' furnace to assure it was working properly. At no time were the appellants warned by Unger or Peoples about improper venting of the furnace.

The appellants contend they did not discover their health problems were caused by the improperly vented furnace until November 24, 1985, when Calvin Fowler inspected the furnace. Appellants filed a negligence suit against Unger, Lee, and Peoples on November 16, 1987.

Upon ruling on appellees' motions for summary judgment, the district court concluded all alleged negligent acts occurred prior to November 14, 1985, and that the adult appellants knew or could have reasonably ascertained prior to November 14, 1985, that their injuries were caused by appellees' negligent acts. Thus, the court found appellants' action was time barred by K.S.A. 60-513 and granted summary judgment. As for the minor appellants, the district court determined their negligence action against Lee and Unger was barred by an eight-year statute of limitations, K.S.A. 60-515, because the negligent act giving rise to the cause of action occurred no later than August 1, 1977, when the house was fully constructed. The minor appellants' claim against Peoples, however, was found within the statute of limitations because Peoples' last act of negligence occurred on or prior to October 18, 1985, when it inspected the McGraws' furnace.

Upon appeal, the Court of Appeals ruled that summary judgment was improper because genuine issues of fact remained as to when the appellants ascertained their injuries were the result of appellees' negligence. 14 Kan. App. 2d at 687-88. The Court of Appeals also determined that the act giving rise to appellants' cause of action did not occur in 1977 as the district court found,

but in 1981, when appellants were first exposed to appellees' negligence. 14 Kan. App. 2d at 691.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal, we read the record in the light most favorable to the party who defended against the motion for summary judgment, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990); *Mick v. Mani,* 244 Kan. 81, 83, 766 P.2d 147 (1988); *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

Where the affirmative defense of the statute of limitations is asserted, summary judgment may be proper where there is no dispute or genuine issue as to the time when the statute commenced to run. But in a tort action where the evidence is in dispute as to when substantial injury first appears or becomes reasonably ascertainable, the issue is for determination by the trier of fact. *Hecht v. First National Bank & Trust Co.,* 208 Kan. 84, 93, 490 P.2d 649 (1971); *George v. W-G Fertilizer, Inc.,* 205 Kan. 360, 366, 469 P.2d 459 (1970).

The statute of limitations for a tort action is two years. K.S.A. 60-513(a). The date upon which the statute of limitations commences in this case is determined by K.S.A. 60-513(b). It provides:

"Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

In the present action, the parties dispute when the statute of limitations commenced to run. Lee and Unger allege negligent

design and installation could have occurred no later than August 1, 1977—the date the house was completed. The alleged negligence of Peoples occurred in October 1982 and in October 1985 when it inspected the furnace. Since appellants' injuries were not immediately ascertainable after the initial act of alleged negligence, the issue in dispute is when the fact of injury became reasonably ascertainable to appellants.

Appellees contend appellants became aware of the damage by 1982 when Kathryn McGraw began to suffer numerous health problems. In any event, appellees assert the appellants knew or could have reasonably ascertained the source of their injuries by October 1985, more than two years prior to the commencement of this action. Appellees' argument is based upon the fact that Kathryn McGraw sought medical treatment within one year of moving into the residence and was periodically suspicious of gas in the house. In addition, Mr. Sheets and a county inspector advised the McGraws to check the furnace for proper ventilation. Finally, the McGraws had complained about the presence of carbon monoxide.

Appellants, on the other hand, admit they were aware of substantial health problems prior to October 1985, but did not know the nature and cause of the problems until November 24, 1985, when they were informed the furnace was installed without proper venting. Thus, argue appellants, the statute of limitations did not commence to run until November 24, 1985, when the fact of injury and appellees' negligence became reasonably ascertainable. In further support of their position, appellants assert they justifiably relied upon Ungers' and Peoples' service reports which indicated the furnace was functioning properly. Finally, appellants point out that prior carbon monoxide tests had produced negative results.

I

The first issue we address is whether the ten-year statute of limitations under K.S.A. 60-513(b) bars prosecution of Lee and Unger, who finished construction of the home August 1, 1977. This negligence action was filed November 16, 1987.

As previously pointed out, the applicable statute is K.S.A. 60-513(b). The pertinent clause to this issue provides: "but in no

event *shall the period be extended* more than ten (10) years beyond the time of the act giving rise to the cause of action." (Emphasis added.)

Lee and Unger argue the legislature intended to cut off all negligence actions ten years after the negligent act, regardless of when the cause of action accrues, substantial injury occurs, or the fact of injury becomes reasonably ascertainable. We have held otherwise.

In *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974), we construed what is now K.S.A. 60-513(b). *Ruthrauff* arose from a gas explosion and fire on September 17, 1970, which destroyed Mrs. Smith's residence and caused her death twelve days later. The administratrix of Mrs. Smith's estate filed a suit against the building and plumbing contractors for damages on September 15, 1972. The contractor's last work on the residence was completed in May 1959. 214 Kan. at 186. Thus, the action was filed within two years of the explosion, but thirteen years after the contractors completed construction of the residence. The trial court invoked what is now 60-513(b) and entered summary judgment in favor of the contractors. 214 Kan. at 187.

We reversed, with a discussion of 60-513(b), stating:

"Under K.S.A. 60-510 this primary 2 year period [in 60-513(a)] is not to commence until each cause of action shall accrue, *i.e.*, when substantial injury results. The 10 year provision is secondary and speaks to this primary period when it states 'but in *no event shall the period be extended* more than ten (10) years beyond the time of the act giving rise to the cause of action.' The 'period' referred to would appear to be the 'period of limitation' mentioned immediately preceding and this refers to the primary 2 year period provided for in the statute. This would indicate to us that the legislature did not intend to place a restriction on the primary 2 year period which commences when the action accrues. It is merely a limitation on the extension of the 2 year period when substantial injury is not immediately ascertainable. If the legislature intended otherwise it could have clearly expressed itself by saying that in no event shall *an action be commenced* more than 10 years beyond the time of the act giving rise to the cause of action. This they did not do. Accordingly we hold that the last clause in this statute, which states 'but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action,' does not affect or limit the primary 2 year period for bringing an action where the fact of substantial injury is immediately apparent as in the case of an explosion and resulting fire." 214 Kan. at 191. (Emphasis in original.)

Justice Fromme, speaking for the court, concluded that plaintiff's claim accrued when the explosion and injury occurred on September 17, 1970, that action on the claim was commenced within the primary two-year period of limitation, and that the ten-year limitation did not apply because substantial injury was immediately ascertainable. 214 Kan. at 192.

For ready referral we repeat the first clause of K.S.A. 60-513(b), which states: "[T]he cause of action in this [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury . . . ."

The *Ruthrauff* opinion construes that clause to mean that the two-year limitation does not commence until there is substantial injury. Thus, even if the wrongful act occurs at some prior time (1959), the cause of action does not accrue until there is substantial injury (1970).

*Ruthrauff* also held that the ten-year limitation applies only when substantial injury is sustained but the facts of such injury are not reasonably ascertainable until a later date. We concluded the ten-year limitation is merely a limit on the extension of the two-year limitation when an injury is not immediately ascertainable. Thus, the ten-year limitation is not an absolute cutoff from the date of the wrongful act, but acts as an outside limit on the two-year limitation. Under *Ruthrauff*, construing K.S.A. 60-513(b), a wrongful act alone does not commence the limitation unless substantial injury occurs at the time of the act. Rather, when an act occurs which later causes substantial injury, both the two-year and ten-year periods of limitation are triggered at the time of substantial injury, unless the facts of such injury are not ascertainable until later, in which case the two-year statute of limitations begins at the later date. But in no event, under K.S.A. 60-513(b), shall the period of limitations extend beyond ten years from the date of substantial injury.

We applied this interpretation of *Ruthrauff* in *Kinell v. N. W. Dible Co.*, 240 Kan. 439, 731 P.2d 245 (1987). *Kinell* involved a damage suit by a group of condominium owners against the builder and original owner of the condominium complex for negligent installation of fireplaces. Construction of the condominium units was completed in 1970. This action was commenced for

damages caused by a fire which occurred on November 29, 1981. 240 Kan. at 440-41.

The trial court granted judgment for the builder on the theory the statute of limitations had run. 240 Kan. at 442. We reversed and stated:

"The portion of K.S.A. 60-513(b) applicable herein states an injured party's cause of action shall not be deemed to accrue until after the tort first causes substantial injury. Some tortious acts do not cause injury until more than two years after the tortious act occurred. This statutory provision gives the injured party two years to bring an action after he or she has first sustained substantial injury. The ten-year cap contained in K.S.A. 60-513(b) is applicable only where the fact of injury is not reasonably ascertainable until some time after substantial injury occurs. See *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974). In the case before us, the action was brought in less than two years after the 1981 fire, and ensuing official investigation into the cause of the fire resulted in plaintiffs becoming obligated to make expenditures for remedial construction to their fireplaces. Under the facts herein, the 'substantial injury' provision in K.S.A. 60-513(b) means when the act giving rise to the injury first caused substantial injury to plaintiffs." 240 Kan. at 443.

Therefore, we concluded the district court erred in ruling the statute of limitations barred plaintiffs' claims because plaintiffs did not suffer substantial injury until 1981. 240 Kan. at 443-44.

The *Ruthrauff* rule was also applied in *Olson v. State Highway Commission,* 235 Kan. 20, 679 P.2d 167 (1984). Olson brought suit for damages to her house caused from blasting by the State Highway Commission and its contractor. The blasting occurred between the spring of 1978 and September 1979. Olson first saw a small crack in the foundation in May or June of 1978. The defendants advised they would discuss the matter with Olson when the blasting was completed; however, the discussion never occurred. In March, 1980, Olson discovered fourteen or fifteen cracks in the foundation and filed suit on October 29, 1980. 235 Kan. at 21-22.

The trial court held the statute of limitations had run. Citing *Ruthrauff,* we reversed and stated that a cause of action does not accrue until the act giving rise to the cause of action first causes substantial injury or until the fact of injury is reasonably ascertainable. 235 Kan. at 26. In addition, we acknowledged and applied Judge Gard's comments on K.S.A. 60-513(b) where he

states: " 'There is no limitation period running from the time of the initial act of negligence unless the act of negligence and injury are simultaneous.' " 235 Kan. at 26 (quoting 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-513, pp. 23-26 [1979]). Thus, we held the date substantial injury became reasonably ascertainable, whether when one hairline crack appeared or when additional blasting occurred, was an issue of fact to be determined by the jury. 235 Kan. at 27.

Analysis of the foregoing cases clearly establishes that the statute of limitations under K.S.A. 60-513(b) is not triggered until substantial injury occurs or is reasonably ascertainable, regardless of the antiquity of the wrongful act which caused the injury. This interpretation of K.S.A. 60-513(b) expresses the clear legislative intent. This is more apparent when we examine the 1976 amendment to K.S.A. 60-513.

In 1976 the legislature amended K.S.A. 60-513, in part, by adding subsection (c), which pertains only to health care providers. The legislature saw fit to adopt the language we suggested in *Ruthrauff* to create a long-term limitation by stating, "but in no event *shall such an action be commenced* more than four (4) years beyond the time of the act giving rise to the cause of action." L. 1976, ch. 254 § 1. This language created an absolute four-year outside limit on negligence actions against health care providers as contrasted to the language of K.S.A. 60-513(b), which stated that the period could not be *extended* more than ten years beyond the time of the act giving rise to the cause of action.

We construed subsection (c) in *Stephens v. Snyder Clinic Assn,* 230 Kan. 115, 631 P.2d 222 (1981), where we compared the meaning of subsection (c) with the *Ruthrauff* interpretation of subsection (b). In *Stephens,* we recognized the statutory change of language in subsection (c), applicable to health care providers, changed the rule of law previously expressed in *Kitchener v. Williams,* 171 Kan. 540, 236 P.2d 64 (1951), where we first held tort actions accrue on the date of substantial injury. In *Ruthrauff,* we held subsection (b) codified *Kitchener* and applied that rule to the ten-year statute of limitations in all tort actions. In *Stephens,* we affirmed *Ruthrauff* but distinguished the language of K.S.A. 60-513(c), which applies only to negligence actions against health care providers. 230 Kan. at 123.

In our examination of K.S.A. 60-513(b), we cannot ignore *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989). *Tomlinson* arose from a certified question presented by the United States District Court. The certified question presented the following issue: "Does the ten-year limitation of K.S.A. 60-513(b) apply to claims involving latent diseases and, if so, is it constitutional as applied to this plaintiff?"

We answered both questions in the affirmative. Tomlinson filed suit on May 11, 1987, for personal injuries sustained from exposure to asbestos which was manufactured, sold, or distributed by eight corporate defendants. Tomlinson's last exposure to the asbestos was in 1971; however, his injuries were not ascertained until September 1986. Thus, his suit was filed within two years of his ascertainment of substantial injury but more than ten years after his last exposure to the asbestos. 244 Kan. at 474-75.

We acknowledged that K.S.A. 60-513(b) was the applicable statute. Following a long, detailed analysis of *Ruthrauff*, we stated: "[T]he rule announced in *Ruthrauff* remains applicable to the present case." 244 Kan. at 477. In spite of this strong statement, we abandoned the *Ruthrauff* rule and held the statute of limitations started running at the time of Tomlinson's last exposure to asbestos in 1971 and that the ten-year statute had run. 244 Kan. at 486.

In reaching this conclusion, we examined two conflicting federal district court interpretations of K.S.A. 60-513(b) as applied to latent diseases. In *Colby v. E. R. Squibb & Sons, Inc.*, 589 F. Supp. 714 (D. Kan. 1984), Judge Kelly interpreted the language of K.S.A. 60-513 and concluded the time of the act giving rise to the cause of action meant the date on which the plaintiff received substantial injury and not the date of defendant's action. 589 F. Supp. at 716. In *Cowan by Cowan v. Lederle Laboratories*, 604 F. Supp. 438 (D. Kan. 1985), Chief Judge O'Connor interpreted K.S.A. 60-513(b) to mean that the date of exposure of the injured party to the alleged harmful substance was the time of the act giving rise to the cause of action, rather than the date of a subsequent substantial injury. 604 F. Supp. at 443.

In *Tomlinson*, we did not follow the rule of *Ruthrauff*, which held the ten-year statute started running from the date of substantial injury and adopted the interpretation of Judge O'Connor.

Although *Tomlinson* was concerned with the commencement of the statute of limitations as applied to a latent disease, there is no latent disease exception in K.S.A. 60-513(b) by which *Tomlinson* would be placed in a separate category of negligence actions. The statute of limitations applicable to *Tomlinson* is the same as that for all negligence actions, whether they deal with latent diseases or other injuries which are not immediately ascertainable. We are unable to distinguish *Tomlinson* from *Ruthrauff, Olson,* or *Kinell.*

Thus, under the rule of *Ruthrauff,* Tomlinson had timely filed his action. His injuries were not ascertained until September 1986, and his suit was filed on May 11, 1987, within two years of his ascertainment of substantial injury but sixteen years after his last exposure to asbestos. We incorrectly applied K.S.A. 60-513(b) as construed by *Ruthrauff* and thereby barred Tomlinson's claim for damages. We hereby overrule *Tomlinson.*

As the foregoing discussion establishes, we have ratified the *Ruthrauff* rule on numerous occasions. In 1987 the legislature also recognized the rule of *Ruthrauff* by amending K.S.A. 60-513(b) to conform to the language suggested in *Ruthrauff* and continued the *Ruthrauff* rule in force until July 1, 1989. The amendment (now found at K.S.A. 1990 Supp. 60-513[b], [d]) provides:

"(b) Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.* [Emphasis added.]

. . . .

"(d) The provisions of this section as it was constituted prior to July 1, 1987, shall continue in force and effect for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date." L. 1987, ch. 222.

We conclude the *Ruthrauff* rule is applicable to the present case and hold appellants' cause of action did not accrue until they had suffered substantial ascertainable injury. Substantial injury could not have occurred prior to 1981. Appellants filed their

action in 1987, and the ten-year limitation, therefore, does not bar prosecution in this case.

## II

The next issue we consider is the time when the minor McGraws' cause of action accrued. K.S.A. 60-515(a) authorizes a plaintiff, who is a minor at the time a cause of action accrues, to bring an action within one year after reaching majority, "except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action."

The statute of limitations for minors, above quoted, uses the language suggested in *Ruthrauff* as an absolute limitation on the commencement of an action. This language was adopted by the legislature in K.S.A. 60-513(c) for health care providers. As previously stated, we construed that language in *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, holding the four-year statute of limitations begins when a negligent act occurs rather than when substantial injury is ascertained.

Thus, we hold that K.S.A. 60-515(a) triggers the eight-year statute of limitations for minors on the date of the negligent act. Appellants' causes of action based on faulty design and installation of the furnace arose on August 1, 1977, and are therefore barred by the foregoing statute. Their cause of action for negligent inspection against Unger and Peoples arose in 1985 and is not barred by the eight-year statute of limitations.

## III

The final issue to determine is when the fact of injury should have become reasonably ascertainable to the appellants. The facts disclose appellants sought an explanation of their ill health from 1981 through November 24, 1985. On that date, a repairman told them their furnace was improperly vented.

In *Miller v. Beech Aircraft Corporation*, 204 Kan. 184, 460 P.2d 535 (1969), the plaintiff brought a negligence action against his employer for negligent failure to provide a safe work environment. Plaintiff's work area was very dusty and poorly ventilated. After fourteen years of service, plaintiff developed emphysema and pulmonary fibrosis and was forced to resign for health reasons. 204 Kan. at 184-86. Although plaintiff was con-

cerned about his work environment for a number of years and had requested face masks and the installation of fans, he had never been warned of a medical risk in returning to work. This court determined:

"[T]he evidence as to what if any medical advice plaintiff received, and whether he was or should have been aware of the actual state of his health *and the connection between his employment and the pulmonary fibrosis ravaging his lungs*, was not sufficiently conclusive for the trial court to resolve, as a matter of law, the issue raised by the statute of limitations." (Emphasis added) 204 Kan. at 189-90.

*Hecht v. First National Bank & Trust, Co.* 208 Kan. 84, 490 P.2d 649 (1971), dealt with a medical malpractice suit wherein the plaintiff suffered damages from alleged negligent radiation therapy. The defendant asserted plaintiff's action was barred by the two-year statute of limitations, and the district court granted summary judgment. 208 Kan. at 85. Plaintiff began radiation treatment on January 28, 1966, but it was discontinued on February 7, due to an abnormal skin reaction. Throughout the month of March, plaintiff's physician told her the skin reaction was subsiding and healing. 208 Kan. at 87. On March 12, 1966, a second physician determined the treatment was unsuccessful and by December 1966, plaintiff was advised an ulcer caused by the radiation required surgical removal. 208 Kan. at 88-89. The defendant alleged plaintiff knew of her injury in February 1966 and no later than March 12, 1966. Plaintiff argued the fact of her injury was not reasonably ascertainable until January 1967, when surgery was prescribed. 208 Kan. at 92.

The *Hecht* court found there was inconclusive evidence for the trial court to resolve the issue of when plaintiff's substantial injury became reasonably ascertainable:

"Since the evidence presented, as we see it, is inconclusive as to what point in time plaintiff's injury could be said to be substantial or reasonably ascertainable, we conclude that plaintiff should be afforded an opportunity to *prove that she neither knew nor could reasonably have been expected to know of defendant's alleged negligence* until the date alleged in her petition [January 1967]. A summary judgment based on the premise that plaintiff on March 13, 1966, knew or could have reasonably ascertained *that she had suffered substantial injury result[ing] from alleged acts of negligence by defendants* necessitated a finding of fact which was, we believe, in good faith disputed." 208 Kan. at 92. (Emphasis added.)

Finally, we examine *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985). In *Cleveland*, the plaintiff underwent surgery on May 19, 1978, to correct a recurrent urinary tract infection. The defendant, plaintiff's physician, warned plaintiff he might suffer temporary urinary incontinence and sexual impotence. 237 Kan. at 411. Plaintiff's incontinence and impotence continued for twenty months and on September 22, 1979, plaintiff was advised the incontinence was a permanent condition, the result of the prior negligently performed surgery. 237 Kan. at 412-14.

Plaintiff's action was commenced August 14, 1980. Defendant argued the action was barred by the statute of limitations because plaintiff's injury was reasonably ascertainable immediately after the surgery. We found that although plaintiff's symptoms and injuries were known prior to August 14, 1978, the fact of the injury was not immediately ascertainable because plaintiff had no reason to suspect the conditions were permanent *or the result of negligence by the defendant.* 237 Kan. at 414-15.

Appellees rely on *Friends University v. W. R. Grace & Co.,* 227 Kan. 559, 608 P.2d 936 (1980), and *Roe v. Diefendorf,* 236 Kan. 218, 689 P.2d 855 (1984). Their reliance is misplaced. In *Friends,* plaintiff brought an action against the manufacturer of roofing material used to roof the college's new library. The roof of the library was complete in 1969 and in 1970 it began to leak with every rainfall. In April, 1975, the college learned defendant's failure to bond the roofing material to the substructure was the cause of leaking. 227 Kan. at 559-61. Plaintiff's action was not filed until March 1977.

We determined plaintiff's failure to know the exact scientific nature of the problem did not toll the commencement of the statute of limitations where it was clearly apparent there was a severe problem with the roof caused by defective design, materials, or workmanship in 1970. 227 Kan. at 563.

In *Roe v. Diefendorf,* the plaintiff was injured in an automobile accident negligently caused by defendant on November 14, 1979. In February 1981, the plaintiff reinjured his back and brought an action against defendant on June 28, 1982. 236 Kan. at 219. Plaintiff argued the statute of limitations did not commence running until February 1981, when he realized the full extent of his

injuries sustained in the automobile accident. We ruled otherwise, holding that an action accrues when the victim has a sufficient ascertainable injury to justify an action for damages, regardless of the extent of the injury. 236 Kan. at 222.

Unlike the plaintiffs in *Friends* and *Roe*, the appellants in the present case do not claim they did not realize the extent of their health problems. In *Friends* and *Roe*, the parties whose negligence caused the injuries were immediately known and the injuries were ascertainable within a short period of time. In the case at hand, however, there are disputed facts as to when the appellants realized their health problems were associated with the alleged improperly ventilated furnace.

It is axiomatic that every case involving actionable negligence must contain three essential elements: (1) There must be a duty running from the defendant to the plaintiff; (2) the defendant must have breached the duty; and (3) the breach of duty by the defendant must have injured and damaged the plaintiff. *Kitchener v. Williams,* 171 Kan. at 547 (quoting *Faris v. Hoberg et al.,* 134 Ind. 269, 33 N.E. 1028 [1892]).

Here, the appellants knew they were ill long before the suit was filed. They suspected carbon monoxide gas poisoning; however, there were differing medical opinions on the cause of their illnesses. Injury and damages alone are not sufficient for the accrual of a negligence action. Establishing when the facts of injury were reasonably ascertainable is an essential element in determining when a tort action accrued. In this case, the evidence is controverted as to when the injury was reasonably ascertainable and when the cause of the injury was determined. If we accept Kathryn McGraw's testimony as true, as we must for purposes of summary judgment, then the determination of the cause of the injury was made on November 24, 1985.

In light of the foregoing, we hold summary judgment was improper. The issue of when the appellants reasonably ascertained they suffered substantial injuries caused by appellees' negligence is a material question of fact which should be resolved by the jury.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is reversed

as to the adult plaintiffs, affirmed as to the minors' faulty design and installation causes of action, and reversed as to the minors' negligent inspection cause of action. The case is remanded for further proceedings consistent with this opinion.

ABBOTT, J., not participating.

MCFARLAND, J., concurring in part and dissenting in part: I believe the facts in *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989), distinguish it from the case before us and that, accordingly, the majority's overruling of *Tomlinson* is inappropriate.

The statement of facts accompanying the certified question in *Tomlinson* stated:

"From 1965 through September 1986, Mr. Tomlinson worked as an insulator. Up until 1971, he applied asbestos-containing products and other products to steam lines, boilers and other vessels having very hot and searing temperatures. At times, he also removed asbestos-containing insulation from steam lines during maintenance of the lines.

"During his deposition, Mr. Tomlinson identified products manufactured by defendants which he claims he used on specific job sites. Mr. Tomlinson's last exposure to asbestos-containing products manufactured by any of the defendants occurred in 1971."

Eight different manufacturers of asbestos products were named as defendants. When the manufacturers produced the products Tomlinson used was not an issue—only the time period Tomlinson was exposed to such products was involved. Tomlinson's *last exposure* to any of the products was more than ten years prior to the commencement of his action. In unanimously holding that Tomlinson's action was barred by K.S.A. 60-513(b), we reasoned:

"The ten-year limitation and the other provisions contained in K.S.A. 60-513(b) apply to those causes of action listed in the section. Subsection (a) currently lists seven different types of actions including, under paragraph (4), '[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated.' Thus, by its express terms, the statute makes the ten-year limitation provision contained in subsection (b) applicable to all personal injury actions, whether based upon negligence or strict liability. . . .

"Whether the ten-year limitation contained in K.S.A. 60-513(b) applies to the plaintiff's cause of action must be resolved by an analysis of the Kansas statute. As noted in Judge Kelly's order of certification, the federal district court decisions interpreting subsection (b) have yielded different results. The plaintiff, citing *Colby v. E. R. Squibb & Sons, Inc.*, 589 F.

Supp. 714 (D. Kan. 1984), argues that the ten-year limitation does not begin until the person bringing the action has received a substantial injury. Thus, he argues that the ten-year limitation did not begin to run upon his last exposure to asbestos in 1971, but upon the diagnosis of his asbestos-related injury in 1986.

"The ten-year limitation contained in K.S.A. 60-513(b) begins at 'the time of the act giving rise to the cause of action.' In *Colby*, this phrase was interpreted to mean the date on which the plaintiff received a substantial injury and not the date of the defendant's action.

"Chief Judge Earl E. O'Connor reached a different conclusion in *Cowan by Cowan v. Lederle Laboratories*, 604 F. Supp. 438 (D. Kan. 1985). In *Cowan*, the court, citing the analysis of Judge Rogers in *Purcell v. Abbott Laboratories*, No. 81-4237 (D. Kan., *unpublished*, June 2, 1982), held that the phrase 'the act giving rise to the cause of action' meant the date of the exposure of the injured party to the allegedly harmful substance, and not the date of the subsequent substantial injury.

"In *Cowan*, plaintiffs had brought an action for the physical and mental damages allegedly caused by the discoloration of their daughter's teeth due to her ingestion of tetracycline produced by the defendant. After quoting the earlier interpretation of the statute in *Colby*, the court stated:

'If the latter (gerund) construction is correct, then "the time of the act giving rise to the cause of action" might be better phrased as "the time when the cause of action accrued." One would then look to the opening lines of K.S.A. 60-513(b), which state that ". . . the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury." In other words, "the act giving rise to the cause of action" would be the causing of substantial injury—here, the discoloration of Lisa's teeth. Plaintiffs would then have up to ten years after *that* in which to file suit (but no more than two years after the fact of Lisa's injury had become reasonably ascertainable).

'If one looks only at the portion of K.S.A. 60-513(b) which follows the last comma, this latter construction seems entirely reasonable. As Judge Rogers noted, however, this construction gives the phrase "act giving rise to the cause of action" two different meanings within the same subsection. Where it first appears in that subsection, the phrase could not possibly be construed as a gerund. Rather, it must refer to the time of ingestion of tetracycline. Because that construction is equally reasonable as to the second appearance of this phrase, we decline to assume that the legislature intended the phrase to have two different meanings within the same subsection. Therefore, both appearances of the phrase "act giving rise to the cause of action" must refer to Lisa Cowan's ingestion of tetracycline.' 604 F. Supp. at 443.

"While it is possible to interpret the last clause of subsection (b) in isolation so that the ten-year maximum limitation period does not commence until the time of substantial injury, this interpretation requires separate and different interpretations of the phrase 'the act giving rise to the cause of action.'

" 'It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious, and sensible if that can be done without doing violence to plain provisions therein contained.' *State, ex rel., v. Kalb,* 218 Kan. 459, 464, 543 P.2d 872 (1975), *modified* 219 Kan. 231, 546 P.2d 1406 (1976). The various provisions of a statute should be construed together to result in consistency rather than inconsistency, if it is reasonably possible to so construe them. *Terrill v. Hoyt,* 149 Kan. 51, 55, 87 P.2d 238 (1939). In the present case, a consistent interpretation of the phrase 'the act giving rise to the cause of action,' as the phrase is used in the separate clauses of K.S.A. 60-513(b), requires interpreting the phrase to mean the defendant's wrongful act, rather than the occurrence of a substantial injury.

"Applying this interpretation to the instant case, *we conclude that the ten-year limitation contained in subsection (b) began, at the latest, upon the last exposure of the plaintiff to asbestos produced, sold, and distributed by the defendants in 1971.*" 244 Kan. at 479-81.

In the case before us, plaintiffs were first exposed to the allegedly toxic substance from the furnace in 1981 and last exposed sometime after November 24, 1985 (the date plaintiffs contend they discovered the furnace was improperly vented). This action was filed on November 16, 1987, less than two years later.

Thus, there is nothing in *Tomlinson* that would bar the action herein and there is no reason to overrule *Tomlinson.* This court in *Tomlinson* discussed *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974), and held its rule applied to *Tomlinson.* The *Tomlinson* court found nothing inconsistent between its holding and that of *Ruthrauff.* Yet the majority herein finds it necessary to overrule *Tomlinson* in order to uphold *Ruthrauff.*

Except for the majority's discussion of and its overruling of *Tomlinson,* I concur with the balance of the majority opinion.