Charles **KOCH**, Nancy Koch, Tim Koch, David Koch, Michael Koch, Jennifer Koch, and Brenna Marie Koch, d/o/b 6–17–89 and Andrew Christopher Koch, d/o/b/ 12–17–91, minor children, by and through their next friend and natural father, Tim Koch, and Allen David Koch, d/o/b 8–23–95, a minor, by and through his next friend and natural father, David Koch, Plaintiffs,

v.

**SHELL OIL COMPANY and Feed Specialties Co., Inc., and Occidental Chemical Corp., f/k/a Diamond Shamrock Corp., Defendants.**

No. Civ.A. 92–4239–DES.

United States District Court, D. Kansas.

June 1, 1998.

Order Denying Reconsideration July 16, 1998.

Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Ronald R. Hein, Stephen P. Weir, Hein & Weir, Chtd., Topeka, KS, for Plaintiffs.

Hal D. Meltzer, Gregory N. Pottorff, Turner & Boisseau, Chtd., Overland Park, KS, James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, Edward L. Keeley, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, Bryce A. Abbott, Martin, Churchill, Blair, Hill, Cole & Hollander, Chtd., Wichita, KS, William R. Smith, Law Offices of Wm. R. Smith, Wichita, KS, for Defendants.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on defendant Occidental Chemical Corp.'s Motion for Summary Judgment (Doc. 238).

### I. BACKGROUND

From April 1979 through October 1981, plaintiff Charles Koch fed his dairy cows a feed additive known as Rabon Oral Larvicide Premix ("R.O.L.Premix"). R.O.L. Premix contains Rabon Oral Larvicide, a product

made from Rabon. Rabon is manufactured and sold by Shell Oil Company ("Shell") and Occidental Chemical Corp. ("Occidental") R.O.L. Premix is distributed by Feed Specialties, Inc. ("Feed Specialties").

Beginning in May 1979, and continuing until July 1986, a significant number of Mr. Koch's cattle died. He purchased his last batch of R.O.L. Premix in September 1981, and ceased using the product at the end of October 1981 because he suspected that the product was involved in the death of his cattle. Mr. Koch himself has experienced health problems since the 1980's, which he attributes to his exposure to Rabon.

In March 1991, experts developed a test which could detect residual Rabon in fat tissue. In April 1991, these experts confirmed the presence of Rabon in tissue taken both from Mr. Koch, and from one of Mr. Koch's bulls that had died in 1981. On November 25, 1991, Mr. Koch filed suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, as well as physical injuries to himself, his wife and children, and his grandchildren.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

■ Occidental contends that plaintiffs' claims are barred by the two-year statute of

limitations found in Kan.Stat.Ann. § 60–513. As a general rule, the cited statute requires that a tort action be brought within two years from the date the act giving rise to the cause of action first causes substantial injury. Kan.Stat.Ann. § 60–513(a), (b). However, if the fact of injury is not reasonably ascertainable until sometime after the initial tortious act, the limitation period commences at the time the fact of injury becomes reasonably ascertainable to the injured party. Kan.Stat. Ann. § 60–513(b). Ascertainment of the "fact of injury" for purposes of triggering the discovery rule contained in Kan.Stat.Ann. § 60–513(b) includes not only ascertainment of the injury itself, but also the cause of the injury. *See, e.g., Gilger v. Lee Const., Inc.,* 249 Kan. 307, 820 P.2d 390, 400–01 (Kan.) (plaintiffs suspected carbon monoxide gas poisoning caused their illness, but medical opinions differed; evidence was controverted as to when injury was reasonably ascertainable and when plaintiffs realized their health problems were associated with the alleged improperly vented furnace).

In this case, the facts establish that Charles Koch's claim accrued no later than May 1991, and his family's claims accrued no later than April 1993. Occidental maintains that Charles Koch's cause of action and his family's causes of action were commenced against Occidental on May 24, 1996, and August 8, 1996, respectively. Therefore, Occidental concludes, since well over two years elapsed between the accrual and commencement dates, plaintiffs' claims are barred by the two-year statute of limitations in Kan. Stat.Ann. § 60–513.

Plaintiffs advance two arguments in response. Plaintiffs first argue that Kan.Stat. Ann. § 60–3303(b)(2)(D), which contains exceptions to the general statute of repose found at Kan.Stat.Ann. § 60–513(b), somehow overrides the two-year statute of limitations in Kan.Stat.Ann. § 60–513(a)(4). The court finds no merit to this argument. Plaintiffs also contend that their actions against Occidental should be deemed to have commenced in March and April 1993, upon the filing of their motions to amend, rather than upon the filing of the amended complaints in May and August 1996. In support of their argument, plaintiffs cite *Wallace v. Sherwin*

*Williams Co., Inc.,* 720 F.Supp. 158 (D.Kan. 1988).

In *Wallace,* the plaintiff filed a motion to amend his complaint to add defendant Giant Corporation on May 20, 1988. *Id.* Attached as an exhibit to that motion was plaintiff's proposed amended complaint. *Id.* The *Wallace* court granted the plaintiff leave to file his amended complaint on June 14, 1988. *Id.* The statute of limitations expired on June 19, 1988, and plaintiff filed his amended complaint on June 23, 1988. *Id.* Giant Corporation received service of process on July 6, 1988, which was properly made within ninety days of the date the amended complaint was filed. *Id.* The *Wallace* court found that the plaintiff's amended complaint was effectively filed when his motion to amend was filed on May 20, 1988, holding that an amended complaint should be deemed filed on the filing date of the motion to amend rather than the date on which the actual amended complaint was filed where the limitations period expired between those two dates. *Id.*

■ Occidental points out that the plaintiff in *Wallace* obtained service of the summons and amended pleading within ninety days of the filing of the motion to amend as required by Kan.Stat.Ann. § 60–203(a). In contrast, Occidental argues, the delay of over three years between the date on which Charles Koch filed the motions to amend and the date on which he filed the amended complaints and obtained service of process sufficiently distinguishes *Wallace* so as to prevent its application to the instant case. The court disagrees. The critical measuring point is not, as Occidental suggests, the date on which a plaintiff files his motion to amend, but rather the date on which the court grants that motion. Assuming timely service of process upon the filing of an amended complaint, an action is commenced against the added party when a plaintiff files a motion to amend and proposed complaint regardless of when the court grants the motion to amend.

■ The *Wallace* plaintiff filed an amended complaint within ten days after that court granted his motion to amend. Likewise, Charles Koch filed two amended pleadings, each within ten days of this court's decisions to grant his respective motions to amend.

Also like the *Wallace* plaintiff, Charles Koch subsequently obtained service of process within ninety days of the filing of his motions to amend as required by Kan.Stat.Ann. § 60–203(a). Accordingly, the court holds that plaintiff's amended complaints were effectively filed when his motions for leave to file an amended complaint were filed. "To hold otherwise would punish plaintiff and other similarly situated plaintiffs for the court's unavoidable delay in issuing an order granting leave to amend a complaint." *Wallace,* 720 F.Supp. at 159.

Finally, Occidental contends that Allen Koch's claim is barred by the eight-year statute of repose in Kan.Stat.Ann. § 60–515(a) and the ten-year statute of repose in Kan.Stat.Ann. § 60–3303(b). However, since the court cannot reasonably construe the eight-year provision as allowing a person under a disability less time in which to bring an action than a similarly injured person not under a disability would have under the ten-year provision, the court must look to the latter in deciding whether Allen Koch's claim is time barred.

The Kansas Product Liability Act, Kan. Stat.Ann. §§ 60–3301–3307, contains exceptions to the general statute of repose found at Kan.Stat.Ann. § 60–513(b) Section 60–3303(a)(1) provides that "a product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's 'useful safe life' had expired." Section 60–3303(b)(1) states that "[i]n claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired." Section 60–3303(b)(2)(D), however, contains three alternative tests to be used in determining whether a plaintiff's claim is exempt from the ten-year period of repose: (1) "if the harm was caused by prolonged exposure to a defective product," or (2) "the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery," or (3) "if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time." If Allen Koch's claim satisfies any one of these

three tests, his cause of action is not subject to the ten-year statute of repose.

■ Occidental contends that Allen Koch's claim is barred since he cannot show that his alleged harm was caused by prolonged exposure to Rabon. The court disagrees. Defendant provides no authority establishing any minimum period required to constitute "prolonged" exposure. In this case, there is evidence that Allen Koch may have been exposed to trace amounts of Rabon during gestation. Viewing the facts in the light most favorable to plaintiffs and allowing plaintiffs the benefit of all reasonable inferences to be drawn from the evidence, the court believes there is sufficient evidence for a finder of fact to conclude that Allen Koch's alleged harm was caused by prolonged exposure to Rabon.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant Occidental Chemical Corp.'s Motion for Summary Judgment (Doc. 238) is denied.

### ORDER DENYING RECONSIDERATION

This matter is before the court on defendant Occidental Chemical Corp.'s Motion for Reconsideration (Doc. 311). For the reasons set forth below, defendant's motion is denied.

### I. BACKGROUND

From April 1979 through October 1981, plaintiff Charles Koch fed his dairy cows a feed additive known as Rabon Oral Larvicide Premix ("R.O.L.Premix"). R.O.L. Premix contains Rabon Oral Larvicide, a product made from Rabon. Rabon is manufactured and sold by Shell Oil Company ("Shell") and Occidental Chemical Corp. ("Occidental"). R.O.L. Premix is distributed by Feed Specialties, Inc. ("Feed Specialties").

Beginning in May 1979 and continuing until July 1986, a significant number of Mr. Koch's cattle died. He purchased his last batch of R.O.L. Premix in September 1981, and ceased using the product at the end of October 1981 because he suspected that the product was involved in the death of his cattle. Mr. Koch himself has experienced health problems since the 1980's, which he attributes to his exposure to Rabon.

In March 1991, laboratory experts developed a test which could detect residual Rabon deposits in fat tissue. In April 1991, these experts confirmed the presence of Rabon in tissue taken both from Mr. Koch and from one of Mr. Koch's bulls that had died in 1981. On November 25, 1991, Mr. Koch filed suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, as well as physical injuries to himself, his wife and children, and his grandchildren.

Occidental now moves for reconsideration of the court's June 1, 1998, Memorandum and Order denying Occidental's motion for summary judgment.

## II. DISCUSSION

A motion for reconsideration provides the court with an opportunity to correct "manifest errors of law or fact and to review newly discovered evidence." *Dees v. Wilson,* 796 F.Supp. 474, 475 (D.Kan.1992), *aff'd,* 13 F.3d 405 (1993). A court has discretion whether to grant or deny a motion for reconsideration. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). There are three circumstances in which a court may appropriately grant a motion for reconsideration: (1) where the court made a manifest error of fact or law; (2) where there is newly discovered evidence; and (3) where there has been a change in the law. *Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116, 1117 (D.Kan.), *aff'd,* 948 F.2d 1529 (1991).

A motion for reconsideration is not to be used as a vehicle for the losing party to rehash arguments previously considered and rejected. *Voelkel v. GMC,* 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484 (10th Cir. 1994). Indeed, "[a] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* 1989 WL 159369, at *1 (D.Kan.1989) (citing *United States v. Carolina Eastern Chem. Co., Inc.,* 639 F.Supp. 1420, 1423 (D.S.C.1986)). Such motions are therefore not appropriate if the movant intends only that the court hear new arguments or supporting facts. *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert.* *denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

"The party moving for reconsideration has the 'burden to show that there has been a change of law, that new evidence is available, or that reconsideration is necessary to correct clear error or prevent manifest injustice.'" *Mackey v. IBP, Inc.,* 1996 WL 417513 at *2 (D.Kan.1996) (quoting *International Bhd. of Teamsters, Local 955 v. Sambol Meat Packing Co.,* No. 92–2338–JWL, unpublished op. at 2 (D.Kan. Sept. 30, 1993)). Here, Occidental alleges no change in law nor the availability of new evidence. Accordingly, its arguments require the court to decide whether reconsideration is necessary to correct any clear error or prevent manifest injustice.

The court has considered Occidental's arguments and finds that Occidental has not met its burden of showing that reconsideration is necessary in this case to correct clear error or prevent manifest injustice. As stated above, reconsideration is not appropriate if the movant intends only that the court hear new arguments or supporting facts. Accordingly, Occidental's motion must be denied.

**IT IS THEREFORE BY THE COURT ORDERED** that Occidental's Motion for Reconsideration (Doc. 311) is denied.