NOT DESIGNATED FOR PUBLICATION

No. 115,709

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN J. PRUITT,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed November 22, 2017. Affirmed.

*James F. McMahon*, of McConnell & McMahon, of Overland Park, for appellant.

*J. Brian Cox*, deputy general counsel, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

PER CURIAM: John J. Pruitt appeals from the suspension of his driver's license after a de novo trial in district court. On appeal, Pruitt contends that the district court erred in affirming the administrative order of suspension for failure to take a breath test following his arrest. Specifically, Pruitt argues that the district court erred in concluding that a law enforcement officer had reasonable grounds to believe he was operating a motor vehicle under the influence of alcohol and/or drugs. Pruitt also argues that there was not substantial competent evidence to support the length of his suspension. Furthermore, he argues that the district court erred by not allowing him to amend his

1

petition for de novo review. Finally, Pruitt argues that the district court did not give him an adequate opportunity to respond before it affirmed the administrative suspension. Based on our review of the record, we do not find that the district court erred. Thus, we affirm.

FACTS

At approximately 11:15 p.m. on the night of December 24, 2013, Officer David Marshall of the Overland Park Police Department saw a vehicle make a right turn from Santa Fe onto 83rd Street without signaling. In addition, Officer Marshall observed that the vehicle made a "wide" turn—meaning the driver turned into a lane other than the closest one. In making the turn, the driver of the vehicle nearly collided with Officer Marshall's patrol vehicle.

Although Officer Marshall had difficulty doing so due to snow piling up on the street, he was able to turn around to pursue the vehicle. In doing so, Officer Marshall activated his emergency siren and lights. Moreover, the video camera in the officer's patrol vehicle recorded the pursuit.

Unfortunately, the driver of the vehicle—who was ultimately identified as Pruitt— refused to stop despite passing several places where he could have safely pulled over as he was required by law to do. As a result, Officer Marshall continued to pursue Pruitt on 83rd Street. At one point, Officer Marshall used the PA system in his vehicle to direct Pruitt to stop his vehicle. However, Pruitt continued to drive with the officer pursuing him.

At the intersection of 83rd and Metcalf, Pruitt briefly stopped at a red light. Nevertheless, as soon as the light turned green, Pruitt drove away. At one point during the pursuit, Officer Marshall estimated that Pruitt was driving approximately 20 mph but still

2

refused to stop. At another point, Officer Marshall deactivated his emergency equipment and contacted his supervisor to advise him of a possible DUI, and his supervisor gave permission to continue the pursuit. The officer then reactivated his emergency equipment and continued to follow Pruitt's vehicle. Furthermore, at some point during the pursuit, Pruitt nearly collided with another vehicle.

Pruitt eventually pulled into the driveway of his residence near 82nd Terrace in Overland Park and stopped. Officer Marshall saw Pruitt get out of his vehicle and walk towards the house in an unsteady manner. The officer got out of his patrol vehicle and twice ordered Pruitt to stop. Once again, Pruitt ignored Officer Marshall and continued to walk towards the house.

Pruitt finally stopped after Officer Marshall drew his service pistol. As the officer approached, he noticed that Pruitt appeared to be unsteady on his feet and his eyes were bloodshot. In addition, Officer Marshall smelled the strong odor of alcohol on Pruitt's breath. The officer then placed Pruitt under arrest for fleeing and eluding and driving under the influence, and the officer placed him in handcuffs. According to Officer Marshall's testimony, he gave Pruitt his *Miranda* warnings at 11:40 p.m. Officer Marshall also noted that Pruitt's speech was occasionally incoherent and slurred during the arrest and while Pruitt was in the officer's patrol vehicle.

As Officer Marshall took Pruitt to his vehicle, Pruitt told him that he would bust the officer's nose if he were not in handcuffs. Officer Marshall placed Pruitt in the back of his patrol vehicle. After doing so, the officer found two unopened beer containers in Pruitt's vehicle. Officer Marshall did not administer any field sobriety tests or request that Pruitt take a preliminary breath test.

The parties do not dispute that after his arrest, Pruitt refused to submit to testing to determine the alcohol content in his system. Officer Marshall completed—and personally

3

served on Pruitt—an Officer's Certification and Notice of Suspension form (DC-27 form). The DC-27 form noted that Pruitt "refused to submit to or complete testing as requested by a law enforcement officer." The officer also noted on the DC-27 form that Pruitt received oral and written notice as required by K.S.A. 2013 Supp. 8-1001(k). Regarding the "[r]easonable grounds for [his] belief that [Pruitt] was under the influence of alcohol and/or drugs," Officer Marshall checked the boxes for odor of alcohol, alcoholic beverage containers found in vehicle, slurred speech, and bloodshot eyes.

As Pruitt had a prior test refusal, the Kansas Department of Revenue (KDOR) was to suspend his license for one year, and his driving privileges were to be restricted for three years. However, Pruitt filed a timely request for an administrative hearing. At his hearing, Pruitt argued that Officer Marshall did not have reasonable grounds for requesting that he submit to a breath test following his arrest. Moreover, Pruitt argued that Officer Marshall had no basis for arresting him in the first place. Ultimately, the administrative hearing officer disagreed and upheld Pruitt's administrative suspension.

On July 25, 2014, Pruitt filed a petition seeking judicial review in the Johnson County District Court. More than a year later, on August 31, 2015, Pruitt filed a motion to amend his petition for review. In his motion, Pruitt argued that he should be able to add a challenge to the constitutionality of K.S.A. 2013 Supp. 8-1025 in this case. In response, the KDOR argued that only supplements to the original petition—not amendments—are authorized in judicial review actions. The KDOR further argued that even if the code of civil procedure applied, justice did not require the proposed amendment, that the motion to amend was untimely, and that it would be prejudiced if the district court allowed the amendment at such a late date in the proceedings.

On November 4, 2015, the district court held a hearing on Pruitt's motion to amend as well as on a motion for judgment on the pleadings filed by the KDOR. After hearing arguments, the district court denied Pruitt's motion to amend, finding that the motion to

4

amend was untimely, futile, and potentially inappropriate in a judicial review action. Although the record is unclear, it appears that the district court either denied or continued KDOR's motion for judgment on the pleadings.

On March 4, 2016, the district court held a trial de novo. As the party challenging the administrative suspension, Pruitt had the burden of proof and presented his evidence first at the bench trial. Pruitt offered a portion of the video of the incident on the night of December 24, 2013, recorded by the camera in Officer Marshall's patrol vehicle. In addition, Pruitt called Officer Marshall to testify. Upon the conclusion of Officer Marshall's testimony, Pruitt rested and the KDOR moved for a judgment on partial findings pursuant to K.S.A. 60-252(c).

The district court granted the KDOR's motion for judgment on partial findings, concluding that Pruitt failed to meet his burden of proof. Specifically, the district court found that based on the numerous traffic violations committed by Pruitt, his refusal to stop when required to do so, and the indicators of intoxication noted by Officer Marshall were sufficient to show reasonable grounds to suspect that Pruitt had operated his vehicle under the influence of alcohol. Accordingly, the district court affirmed the KDOR's administrative suspension of Pruitt's driver's license.

ANALYSIS

*Substantial Competent Evidence*

The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions. K.S.A. 2016 Supp. 77-603(a); see *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Appeals from administrative suspensions of driver's licenses are subject to review under the KJRA except that appeals to the district court are de novo. K.S.A. 2016 Supp. 8-259(a); see *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 517,

5

213 P.3d 1061 (2009). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity—in this case Pruitt. K.S.A. 2016 Supp. 77-621(a)(1).

We review a district court's ruling in a driver's license suspension case for substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012); *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009). Notwithstanding KDOR's invitation to do so, we find it unnecessary in this case to delve into the murky waters of whether or not the negative finding standard is applicable in driver's license suspension cases reviewed under the KJRA. Instead, we will follow the direction given to us by the Legislature in K.S.A. 2016 Supp. 77-621(c)(7) and review the record on appeal to determine if the district court's decision is based on evidence that is substantial when viewed in light of the record as a whole. See K.S.A. 2016 Supp. 77-621(c)(7).

Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). However, in evaluating the evidence presented at trial, we are not to weigh conflicting evidence nor are we to evaluate the credibility of witnesses. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

Here, Pruitt contends that the district court erred in affirming the administrative suspension of his driver's license. Specifically, Pruitt argues that the evidence presented at the trial was not sufficient for a reasonable person to conclude that Officer Marshall had reasonable grounds to believe he was operating a vehicle while under the influence of alcohol. In response, KDOR argues that there is substantial competent evidence in the

record to support the district court's conclusion that Officer Marshall had reasonable grounds to believe that Pruitt had operated a motor vehicle under the influence of alcohol.

The current version of K.S.A. 2016 Supp. 8-1001(b)—which is applicable in this case—states:

"A law enforcement officer shall request a person to submit to a test . . . [i]f, at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, . . . ; and . . . [t]he person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; . . . . The law enforcement officer directing administration of the test or tests may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the accident investigation or arrest."

Accordingly, the plain language of the statute authorizes a law enforcement officer to request blood alcohol testing if—*at the time of the request*—the officer has *reasonable grounds to believe* the driver was operating a vehicle while under the influence of alcohol and the officer has arrested or taken the driver into custody for *any* state, county, or city offense.

"Reasonable grounds" under the Implied Consent Law is analogous to "probable cause." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013); see *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 17, 20, 290 P.3d 555 (2012). Probable cause is the reasonable belief—drawn from the totality of the circumstances and reasonable inferences known to the law enforcement officer—that the defendant has committed or is committing a specific act. See *Sloop*, 296 Kan. at 20. Accordingly, we must review the record to determine whether the district court erred as a matter of law or abused its discretion in weighing the evidence regarding whether Officer Marshall had reasonable

grounds to believe that Pruitt had operated his vehicle under the influence of alcohol. See *State v. Dupree*, 304 Kan. 377, 389, 373 P.3d 811 (2016).

*Sloop* continues to provide guidance regarding the meaning of the term "reasonable grounds" as used in K.S.A. 2016 Supp. 8-1001(b). It is important to note, however, that the version of K.S.A. 8-1001(b) in effect currently—and which is applicable to Pruitt—is not the same as the version in effect at the time *Sloop* was decided. In particular, the 2013 Legislature amended K.S.A. 8-1001(b) to clarify that a law enforcement officer must have reasonable grounds—"*at the time of the request*" for testing—to believe that the driver was operating a motor vehicle under the influence of alcohol or drugs. (Emphasis added.) K.S.A. 2016 Supp. 8-1001(b)(1). In addition, the 2013 amendment also clarified that the arrest does not have to be for driving under the influence but simply that the driver must have "been arrested or otherwise taken into custody for *any* violation of *any* state statute, county resolution or city ordinance." (Emphasis added.) K.S.A. 2016 Supp. 8-1001(b)(1)(A).

Here, we find substantial competent evidence in the record to support the district court's decision. The testimony of Officer Marshall and the information on the DC-27 form are sufficient evidence upon which a reasonable person could conclude that Officer Marshall observed numerous traffic infractions committed by Pruitt. Initially, Officer Marshall witnessed Pruitt fail to signal a turn. Next, the officer saw Pruitt make a "wide"—or unsafe—turn. In fact, there is evidence in the record showing that Pruitt nearly collided with the officer's patrol vehicle.

Furthermore, Pruitt failed to stop when Officer Marshall activated his lights and siren. Pruitt also failed to stop when Officer Marshall used his PA system to direct him to do so. While in pursuit of Pruitt, Officer Marshall witnessed him drive nearly 20 miles below the speed limit at times and nearly hit another vehicle at one point. Thus, unlike the *Sloop* case—where the officer observed no traffic violations and stopped the driver

for a tag light violation—we find that Officer Marshall had probable cause to suspect a number of traffic violations as well as probable cause to believe that Pruitt was fleeing or eluding a police officer in violation of K.S.A. 2016 Supp. 8-1568.

Moreover, we find that substantial competent evidence supported the district court's conclusion that Officer Marshall had reasonable grounds or probable cause—drawn from the totality of the circumstances and inferences known to him—to believe that Pruitt had been operating a motor vehicle under the influence of alcohol. Specifically, a review of the record reveals that Officer Marshall observed Pruitt: (1) committing numerous traffic violations, (2) refusing to stop his vehicle in response to repeated demands and signals to do so, (3) continuing to ignore commands to stop after arriving at his residence, (4) walking in an unsteady manner, (5) presenting bloodshot eyes, (6) smelling of alcohol, (7) speaking with slurred speech and at times incoherently, (8) telling him that he would smash his nose if he were not cuffed, and (9) having two unopened containers of beer in his car.

Although Pruitt has offered a number of excuses for his actions on the night of December 24, 2013, it is important to note that he had the burden of proof at trial—and continues to have the burden—to show that the KDOR's decision to suspend his driver's license should be set aside. See K.S.A. 2016 Supp. 8-1020(q). A review of the record reveals that the district court considered all of the evidence presented at trial before concluding based on "the totality of the evidence . . . that the law enforcement officer had reasonable grounds to believe that Mr. Pruitt was operating his vehicle under the influence of alcohol or drugs or both and had reasonable grounds to request the testing."

As indicated above, it is not the role of this court to reweigh the evidence presented at trial or to determine the credibility of witnesses. Thus, because we find substantial competent evidence to support this conclusion, we will not replace our judgment for that of the district court.

9

*Prior DUI or Test Refusal*

Next, Pruitt challenges the length of his suspension and restriction. He argues that the district court erred in finding that he had previously refused a blood-alcohol test or had a previous DUI. In response, the State argues that Pruitt failed to preserve this issue for appeal. Furthermore, the State argues that the district court had substantial competent evidence of a prior test refusal.

Although there was a discussion at the end of the trial de novo regarding when Pruitt's administrative suspension should begin, we do not find anything in the record to suggest that he preserved this issue for appeal. Under the KJRA, a party is limited to raising issues on appeal that were raised below. K.S.A. 2016 Supp. 77-617; see *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411, 204 P.3d 562 (2009). Hence, we conclude that this issue is not properly before us.

Even if we assume that Pruitt did appropriately preserve this issue for appeal, we find that he has not met his burden to prove the invalidity of the KDOR's actions. We note that the existence of a prior test refusal or prior DUI is only pertinent to the administrative suspension and restrictions to be imposed under K.S.A. 2016 Supp. 8-1014. Under that statute, the administrative suspension and restrictions increase for each additional failed test or test refusal. Here, the district court upheld a one-year administrative suspension and a three-year ignition interlock restriction.

Although the KDOR was not required to prove the validity of its actions, the record on appeal contains Pruitt's driving record as an attachment to its answer. The driving record indicates that Pruitt had an administrative suspension as a result of a test refusal. On the other hand, Pruitt has cited nothing in the record that would challenge the validity of the KDOR's determination that he had a prior test refusal.

*Motion to Amend*

Pruitt also contends that the district court abused its discretion by denying his motion to amend his petition seeking judicial review of the administrative action taken by the KDOR. Specifically, Pruitt argues that the district court should have allowed him to challenge the constitutionality of K.S.A. 2013 Supp. 8-1025 in this administrative action. We take judicial notice of the fact that the Kansas Supreme Court has declared K.S.A. 2016 Supp. 8-1025—which made it a crime to withdraw the implied consent for testing that arises under K.S.A. 8-1001 by expressly refusing to take the test—unconstitutional in *State v. Ryce*, 303 Kan. 899, 902-03, 368 P.3d 342 (2016), *aff'd on rehearing* 306 Kan. 682, 396 P.3d 711 (2017). However, this does not resolve the issue of whether the district court erred in denying Pruitt's motion to amend his petition for judicial review in the present action.

When reviewing a district court's decision on a motion to amend pleadings, we use an abuse of discretion standard of review. *Thompson v. State*, 293 Kan. 704, 709, 270 P.3d 1089 (2011); *Kinell v. N.W. Dible Co.*, 240 Kan. 439, 444, 731 P.2d 245 (1987). As indicated above, judicial discretion is only abused if (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on a legal error; or (3) the decision is based on a factual error. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party claiming an abuse of discretion—in this case Pruitt—bears the burden of proving it. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

The denial of a motion to amend is not reversible error "unless it affirmatively appears that the [denied] amendment . . . is so material it affects the substantial rights of the adverse party." *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 774, 356 P.3d 1 (2015), *rev. denied* 303 Kan. 1077 (2016). A request to amend pleadings may also be denied if the amendment sought would be futile. See *Johnson v. Board of Pratt*

11

*County Comm'rs*, 259 Kan. 305, 327-28, 913 P.2d 119 (1996). Based on our review of the record, we do not find that the district court abused its discretion in denying Pruitt's motion to amend.

In denying the motion to amend, the district court concluded that justice did not require an amendment under the circumstances presented in this action. In particular, the district court noted that it was questionable whether K.S.A. 2013 Supp. 77-614—which speaks to "supplements" and not to "amendments" to petitions filed pursuant to the KJRA—authorized a motion to amend a petition for judicial review to add new claims. Moreover, the district court found that even if K.S.A. 2013 Supp. 60-215 is applicable in a KJRA action, Pruitt filed the request more than a year after he filed the petition seeking judicial review and after discovery had closed. The district court further found that it would prejudice the KDOR by adding a new issue at such a late date. We find each of the reasons stated by the district court for denying Pruitt's motion to amend to be reasonable and not based on legal or factual error.

We also note that the administrative suspension or restriction of a driver's license is separate and distinct from the bringing of criminal charges against the driver stemming from the same incident. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 642, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015); *State v. Gee*, 27 Kan. App. 2d 739, 743, 8 P.3d 45 (2000). A driver's failure of a breath test or refusal to submit to testing is often the "starting point for a parallel set of procedures, one criminal and one civil, that are independent of one another." 27 Kan. App. 2d at 743. In fact, K.S.A. 2016 Supp. 8-1020(t) specifically states that the disposition of criminal charges against a driver "shall not affect the suspension or suspension and restriction to be imposed under this section." As such, Pruitt's criminal case is immaterial to this administrative action as is the constitutionality of K.S.A. 2013 Supp. 8-1025. Thus, we conclude that the district court did not abuse its discretion by denying Pruitt's motion to amend.

12

*Validity of Judgment*

Finally, Pruitt contends that the district court abused its discretion by ruling on the State's motion for judgment on partial findings. We note that Pruitt has effectively abandoned this claim because he has cited no authority in support of his argument nor does he cite where in the record he may have preserved this issue for appeal. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015); *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

Even if Pruitt preserved this issue for appeal and did not waive it due to his failure to cite authority, we do not find that the district court abused its discretion based on our review of the record. As the parties are aware, "[m]otions for directed verdict have been replaced by motions for judgment as a matter of law in jury trials and by motions for judgment on partial findings in nonjury trials." *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, Syl. ¶ 1, 336 P.3d 891 (2014); 4 Gard and Casad Kansas C. Civ. Proc. 5th Annot. § 60-252 (2012). Because the present case involved a nonjury trial, K.S.A. 2016 Supp. 60-252(c) is controlling.

K.S.A. 2016 Supp. 60-252(c) provides:

> "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law . . . . "

13

In *Lyons v. Holder*, 38 Kan. App. 2d 131, 135, 163 P.3d 343 (2007), a panel of this court found that in ruling on a judgment on partial findings, "the district judge has the power to weigh and evaluate the evidence in the same manner as if he or she were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case." Here, Pruitt had already presented his evidence at the de novo trial and rested. At that point, the attorney for the KDOR then moved for a motion for judgment on partial findings, arguing that Pruitt had not met his burden to prove the invalidity of the agency action. The district court then allowed Pruitt's attorney to respond and for the KDOR's attorney to reply. During the reply, the district court interrupted the attorney for the KDOR—not Pruitt's attorney—and granted the motion for judgment on partial findings. Thus, we do not find that the district court erred in using the procedure authorized by K.S.A. 2016 Supp. 60-252(c).

Affirmed.